## SUPREME COURT.

WILLIAM S. PAINE, as receiver, agt. PETER C. BARNUM *et al.*

*Savings banks — personal liability of trustees for alleged breaches of duty with respect to loans and disposition of the moneys of the bank — Legal representative of a deceased trustee proper party — Parties· to whom the loans are charged to have been made need not be joined as defendants — Complaint — Demurrer.*

Where a loan is made by a savings bank to three persons of $20,000, $15,000 and $15,000, respectively, upon a promissory note by each for the amount he received, with collateral security of promissory notes of a foreign corporation, which notes are secured by trust deeds of such corporation upon unimproved vacant lots without the state, not worth over $10,000 ; and where one of the trustees of the bank at the time of the loan was a large stockholder in said corporation, and the loans were intended to be and were in fact loans to the corporation ; snch facts being known to the trustees of the bank, or could with reasonable diligence have been learned by them ; and where the loans were intended to be to said trustee, and were made because of his interest in the corporation, and the loans were in fact loans upon the security of the lots :

*Held,* that, under the laws of this state affecting savings banks, such transaction is unauthorized and illegal, and a demurrer to the complaint alleging these facts, in an action to hold the trustees personally liable, will not be sustained.

*Held,* further, that the persons to whom the loans are charged to have been made are not necessary parties defendant.

*Held,* also, that the legal personal representatives of a deceased trustee are properly joined with the surviving trustee.

*Special Term, August,* 1880.

THIS is an action brought by the plaintiff as receiver of the Bond Street Savings Bank, a bank incorporated under the laws of New York, against the surviving trustees of the bank, with whom is joined the legal personal representatives of John R. Willetts, deceased, who was, in his lifetime, a trustee with the other defendants.

The trustees are sought to be held personally liable for alleged breaches of duty, with respect to loans and disposition of the moneys of the bank, which are claimed to have been unauthorized and illegal under the law and charter of the bank.

The plaintiff also alleges in his complaint that the loans were acts of gross negligence, and that the makers thereof were wanting in that care and diligence which a man of ordinary prudence uses in and about his own affairs, and which the trustees of savings banks are bound to use in the affairs of their trust, and which is required of them by law.

The defendants, the executors, &c., of Robert R. Willetts, and Sinclair Toucey, demur to the complaint, upon the ground that the complaint does not state facts sufficient to constitute a cause of action.

The executors of Willetts also demur upon the ground that there is a defect of parties defendant in the omission of the persons as defendants to whom the loans are charged to have been made, and also for that several causes of action have been improperly united in the complaint, viz.: a several cause of action arising out of the alleged acts, loans and investments complained of against the executors of Robert R. Willetts, deceased, and a joint cause of action against all the defendants sued as trustees, and not as representatives of trustees.

*Wilson M. Powell*, for defendants Willetts. *Arthur G. Sedgwick* and *E. Randolph Robinson*, of counsel.

*Elihu Root*, of counsel for defendant Toucey, for demurrer.

*Barlow & Olney*, for plaintiff, and *Francis C. Barlow*, of counsel, opposed.

VAN VORST, *J.* — The complaint alleges that the savings bank, on the 20th day of October, 1870, loaned on call to Emery Child $20,000, to Leverett W. Murray $15,000 and

to Henry E. Seelye $15,000; in all $50,000. That the loans were made to these persons upon their promissory notes, each for the amount specified, payable on demand and bearing interest at the rate of ten per cent per annum; that at the time of the loans these persons, respectively, gave to the savings bank, as collateral security therefor, each a promissory note of the Riverside Improvement Company, an Illinois corporation, for the amount of the moneys loaned them, respectively, and which collateral notes were secured by trust deeds, executed by the improvement company and conveying land belonging to the corporation situated in the neighborhood of the city of Chicago, in the state of Illinois; that the notes of the improvement company were severally dated on the 20th day of October, 1870, and payable in three years from their respective dates, and each was made payable to the order of one of the three persons above-named, who gave it as security to the savings bank; that each of the borrowers, at the time of the borrowing, gave to the bank an instrument in writing authorizing the sale of the collaterals given for the loans, respectively, upon default being made in the payment of the loans, respectively, at private or public sale; that Childs was at the time the president, Murray the secretary and Seelye the treasurer of the improvement company.

The complaint alleges that the lots covered by each of the trust deeds were not fairly and reasonably worth, at the time of the loans, double the amount for the security of which the trust deed was given, or double the amount loaned by the bank upon the security of each note and the accompanying trust deed. That the lots covered by the trust deeds were, at the time of the loans, vacant lots, unbuilt upon and unimproved, and yielding no income or rent, and incapable of yielding any income or rent, and were not productive; that all of the lots were merely the prairie in its natural condition, and were not laid out by streets or otherwise; that they had no present or actual value other than the value of wild, unimproved prairie land at a distance of twelve miles from Chicago, any other

value being purely speculative and depending on the success
of a building speculation; that the aggregate value of all the
lots at the time did not exceed $10,000, and that they were
not now worth $5,000; that the defendant David S. Duns-
comb, one of the trustees of the bank at the time of the loan,
was a large stockholder in the Riverside Improvement Com-
pany and had a pecuniary interest and ownership in its
property and affairs, and that the loans were intended to be,
and were in fact, loans to the company and not to the nom-
inal borrowers; and that all the facts above stated were at the
time known to the trustees and officers of the bank, and to such
of these defendants as were such trustees or officers, who are
now represented by the defendants sued in a representative
capacity, or could have been learned by them with reasonable
care, skill and diligence and attention to their duties; and
that the loans were intended by those who made them to be
loans to and a using by Dunscomb or for his benefit, and were
made because of his interest in the company.

The complaint alleges that the taking of the notes of the
borrowers was intended to be, and was, a mere device to make
it appear that the loans were not made upon the security of
the lots, but that Childs, Murray and Seelye were not persons
of such pecuniary responsibility as that the loans would have
been made to them except for the security of the trust deeds,
and that the loans were, in effect, loans upon the security of
the Illinois lots; that Childs, Murray and Seelye were all resi-
dents of Chicago, in the state of Illinois.

Under the statutes affecting this savings bank and the
trustees thereof, the transactions above referred to cannot be
justified. A brief reference to some of the statutory and
charter provisions will, I am sure, make this result reasonably
clear.

By the sixth section of the act under which the bank was
chartered (*Laws of* 1860, *chap.* 280, *as amended by chap.* 408
*of the Laws of* 1866), it is provided that no loan on bond and
mortgage should be made except upon productive property

Paine agt. Barnum *et al.*

worth double the amount to be secured thereon; and by the sixth section of chapter 257 of the Laws of 1853, savings banks are prohibited from loaning their funds upon notes, bills or any other personal security whatever. By the provisions of chapter 845 of the Laws of 1868, trustees of savings banks are prohibited from loaning moneys on the security of lands situated without this state. The transaction in question was a transgression of the above-mentioned statutory provisions, and in so far as the trustee Dunscomb was interested personally in the loans it was a breach of the sixth section of chapter 280 of the Laws of 1860, which provides "that no trustee shall, directly or indirectly, borrow any of the funds of the bank, or in any manner use the same except to pay necessary current expenses."

Beyond the authority and powers expressly conferred by the statutes and charter, and such as is necessarily implied, with respect to loaning or employing the moneys of the bank, the trustees could not legally advance. These constitute the reasonable limits which circumscribe their action.

If this transaction be regarded either as a loan on the notes of the individuals, Childs, Murray and Seelye, who were the officers of the improvement company, or on those of the company itself, or as a loan upon the security of the land, which was not productive property or worth double the amount advanced, and which was situated without this state, or as a loan, directly or indirectly, to the trustee Dunscomb, in no view can the transaction be pronounced a legal or proper exercise of power by the bank, its officers and trustees. But it is urged, in support of the demurrer, that the provisions of the charter and statutes apply only to permanent investment of the moneys of the bank, and that the investment in question was within the powers conferred by the sixth section of the charter in the words following:

"It shall be the duty of the trustees of said corporation to invest as soon as practicable in public stocks or public securities, or in bonds and mortgages, as provided for in this act;

Paine agt. Barnum *et al.*

all sums received by them beyond an available fund of not exceeding one-third of the total amount of deposits with said institution at the discretion of the said trustees, which they may keep to meet the current payments of said corporation, and which may by them be kept on deposit, on interest or otherwise, in such available form as the trustees may direct."

By this section, it is true that the trustees are vested with a discretion, but that is only with regard to the amount they might keep as an available fund to meet the current payments of the corporation, and which was not to exceed one-third of the total amount of the deposits. But there was no discretion as to how the money was to be kept. It was to be kept on deposit, on interest or otherwise, in such available form as the trustees might direct.

The intention of this clause, and which should be observed in its construction, was to keep, in substance, within reach, a fund ready and available at all times, to meet the current payment which the corporation should be called upon to make. Hence it was directed to be kept on deposit, on interest or otherwise; that is, if interest on the deposit could not be had, they might hold or deposit the same without interest.

The words "in such available form as the trustees may direct," with which the sentence ends, are controlled by the words "kept on deposit," antecedently used, and are not to be construed as authorizing any other disposition or appropriation of the moneys than their being kept and held on deposit, on interest or otherwise.

The plain object of the legislature, in directing these moneys to be so kept as an available fund to meet current payments, would be wholly defeated by any loan or investment of them on notes, mortgages or otherwise. Such loan or investment of this fund would render it practically unavailable in case of need to meet "current payments."

It can with no propriety be argued that the transaction under consideration, by which the funds, instead of being kept, were parted with and sent out of the state, and their

repayment attempted to be secured by the notes of a corporation and citizens residing out of this jurisdiction, and by unimproved land situated in the state of Illinois, was within the power of the trustees. No trustee could for a moment honestly believe that such disposition of the fund was an observance of either the letter or the spirit of the laws to which the corporation and the trustees were subject. If the trustees were prohibited from so investing the moneys of the bank over and above what was needed as an available fund to meet current expenses, *a fortiori*, they would not be justified· in so placing the available fund.

The latter part of the sixth section contains, in terms, a clear expression of the legislative intention as to how this fund should be kept, the word "deposit" not being relinquished. "Temporary deposits may be made in any of the incorporated banks, or in any of the associations which are now or may hereafter be formed under the general or national banking law in the city of New York, and interest may be received at such rates, not exceeding that allowed by law, as may be agreed upon."

I am referred, by the learned counsel for the plaintiff, to an opinion of the late attorney-general Schoonmaker, to the bank department, of the date of October 21, 1878, in which the provisions of a bank charter similar to the one under consideration were discussed by him, in which, amongst other things, he says : "This available fund the trustees may keep to meet current payments, and it may be kept on deposit, on interest or without interest, or in such available form as the trustees may direct. The phrases "available fund" and "available form" are used in contradiction to investment. They do not denote another form of investment or a duty to invest, but a permission to leave uninvested      *      *      *

Investing money is parting with it. But the act provides it may be kept on interest or without interest, or in such available form as the trustees may direct. As the money itself must be kept in an available form, that is, available for making

current payments, the only other available form, except on deposit where it may be drawn on by check, is in money itself, in the vaults of the institution."

I think the construction given by the attorney-general is sound. The terms of the act are so clear, and the intention of the legislature so apparent, that I am at a loss to see how any reasonable doubt can arise with respect to its meaning in this regard.

But it is urged by the learned counsel for the defendants who demur that the transaction which obtained their sanction was not a loan, but a purchase of certain Riverside mortgages, and that the loans upon which the complaint is based, and which are therein styled "call loans," are a wholly different transaction. But from the views above expressed, it was quite as improper and equally illegal to use this fund for the purchase of these mortgages as it would have been to loan it upon the notes, with the mortgages as collateral.

The committee to whom the matter was referred, with power to purchase, visited the property and recommended the loan. The trustee, Dunscomb, who had a pecuniary interest to advance, as is alleged, "was very active in promoting and obtaining the same."

When the private interests of a trustee are to be advanced, the corporate interests as well as those of creditors become subordinate and are apt to be sacrificed.

The transaction must be held, in every view in which it may be regarded, as *ultra vires*, and the trustees who sanctioned the same are liable for breach of duty, and must make good the loss (*Ackerman* agt. *Emmott*, 4 *Barb.*, 626; *Clough* agt. *Bond*, 3 *Mylne & Craig*, 490; *Potter on Corporations, vol. 1, sec. 324*).

Robert R. Willetts, the testator whose legal personal representatives demur, is sufficiently connected with the transaction by the allegations of the complaint to charge him not only with active participation in, but with knowledge of, the transaction in the form which it assumed. He actively par-

ticipated in putting the matter in course of completion, and was chargeable with all that was done with respect to the placing of this money. He never objected, and by his knowledge and means thereof, acquiesced in and adopted whatever was done by his associates and the officers of the bank.

Besides the positive illegality of the transaction the facts alleged in the complaint justify the charge of gross and inexcusable negligence on the part of the testator Willetts and the other defendant, who demurs. The facts constituting such negligence are sufficiently alleged in the complaint.

Trustees of savings banks are under a positive duty to see to it that the funds of the bank are not invested contrary to law, and a disregard of such obligation is a breach of duty and a ground of liability.

A trustee of a corporation should not be exposed in the end to a liability which could not be reasonably anticipated, nor for the consequences of an honest error in judgment, where he is by law clothed with a discretion. But when the law speaks plainly he will avoid liability by following its directions, and the line of obedience is, in this regard, the path of safety.

A trustee of a bank cannot, however, close his eyes and remain passive while his associates are wasting by improvident investment the moneys of the corporation, the entries in respect to which all appear upon the books with which he is presumed to be cognizant. (*See note to Lacy* agt. *Hill*, 20 *Eng. R.*, 755).

It is his duty not only actively to oppose such conduct but to invoke the needful measures to restrain its continuance, and by timely action seek to recover back the moneys. (*Crane* agt. *Heam.*, 26 *N. J. Eq.*, 378; *Styles* agt. *Gray*, 1 *MacN. & G.*, 422; *Hanbury* agt. *Kirtland*, 3 *Sim.*, 265).

If there are any facts in existence to exonerate the defendants from liability they must be interposed by answer, as sufficient appears upon the face of the complaint to charge them with both illegal and negligent conduct.

But it is further urged by the demurring defendants that the complaint does not show that the plaintiff has exhausted his remedy against the persons who were primarily liable to the bank.

The complaint alleges that interest on the loans was paid to October 20, 1872, and no longer; that the officers of the bank, before the appointment of the plaintiff as receiver, under their power to sell the collaterals, sold the notes of the improvement company and bought them in for the aggregate sum of $6,100; that the bank foreclosed the mortgage and bought in the lots, and it is averred, also, that Childs, Murray and Seelye are insolvents and worthless, and that the property bought in does not exceed in value $5,000.

It is not to be supposed that the liability of the trustees is founded upon the notion that they are sureties simply, or that it arises upon a contract express or implied. They are prosecuted for their own wrong in making and in allowing to be made illegal investments of the moneys of the bank. The wrong involves a clear breach of statutory obligation. When that is alleged and proved the plaintiff's cause of action is made out. This breach of duty implies loss and damage. The amount which may in the end be recovered will depend upon the facts proved as to the extent of the loss actually sustained.

The complaint shows that the loans, although long past due, remain unpaid, that the collaterals have been sold, by which considerable loss appears, and that the notes of Childs, Murray and Seelye are of no value whatever.

If the loss has been increased by any fraudulent or negligent action of the receiver, with respect to the securities or their treatment, it must be interposed by answer and proven on the trial, when it will, doubtless, be considered by the court in estimating the damages. And provision can also be made by the judgment for substituting the defendants to the receiver's rights to the property and securities upon the payment of the damages. But the mere fact that the makers of

these notes, non-residents of this state, who have omitted to pay them, and who are alleged to be worthless, have not been sued, and all legal and equitable remedies against them exhausted without success, is no defense to this action.

The above, I think, covers the substance of the objections urged by the defendant's counsel in support of the ground of demurrer; that the complaint does not state facts sufficient to constitute a cause of action. In detail, other objections are urged, but they have all been considered, and are believed to be disposed of by the principles above announced. This ground of demurrer, therefore, must be overruled. It is also objected by the demurring defendants that there is a defect of parties defendant, it being claimed that Childs, Murray and Seelye are necessary parties. It is urged in support of this objection that these parties received the moneys of the savings bank by means of the alleged breaches of trust, and that they were chargeable with notice of the limitations of power imposed by the charter of the bank, and that they are jointly liable 'with the defendants to the bank.

In equity cases, as a matter of convenience and in order to avoid multiplicity of action, and where contribution may be had from those who participated in the wrongful act by which trust property has been misappropriated, those who received the money or property with knowledge of the wrong may be united as defendants with the trustees, and the court frequently compels them to be brought in (*Sherman* agt. *Parish*, 53 *N. Y.*, 483). Where a *tort-feasor*, however, is sued at law, he must get his contribution in a separate suit if he is entitled to it.

Although there are allegations which would clearly entitle the plaintiff to legal redress in the way of damages, yet in the prayer for relief he does ask for equitable relief. And although I cannot determine whether the plaintiff will bring the case to trial at the special term in equity or before a jury, yet the objection will be considered as though this was an action in equity and to be tried as such.

Whether the persons named are necessary parties, the objection being raised by demurrer, must be determined by the allegations of the complaint, and as to whether it discloses facts which absolutely call for the presence of these parties as having incurred liability to the plaintiff with the defendants, or as absolutely bound to contribute with the defendant to meet the losses sustained by the bank.

It does not necessarily follow, from the allegations of the complaint, that Childs, Murray and Seelye, or either of them, were knowingly concerned in the breaches of trust with which the defendants are charged, or that they received the money with actual notice of the limitation upon the power of the trustees to make loans, contained in their charter. Had that been alleged the defendants could without doubt, under the rule and practice of courts of equity above referred to, have well insisted that these persons being concerned in the breaches of trust should be brought in and made to respond in an effective manner. It does not follow that every person who borrows money of a savings bank is necessarily implicated in a breach of trust by the trustees who have exceeded their powers, and by the simple act of receiving the money, although innocent in fact, become a *quasi* trustee with the offending officials. As the complaint does not allege knowledge in these persons or the limitations of powers contained in the charter of the bank, or any facts from which such knowledge must be inferred, it cannot be implied. It was evidently not the design of the pleader so to implicate these persons. If it had been he would have stated facts to charge them. Being severally residents of another state at the time of the loan there is no necessary presumption that they were cognizant of the limitations contained in the local laws of this state. At least such implication alone would hardly justify the court in deciding that this action should not proceed until such persons so sought to be charged with liability should be brought in as defendants. Should it, however, appear from the facts adduced when this action comes on to be tried upon

the merits that these persons are necessary parties they may then be ordered to be brought in.

To this it may be added that for the moneys borrowed, notes' were received by the bank from the borrowers, and the transaction, in the form in which it was made, was afterwards ratified by the bank by a sale of certain collaterals and the foreclosure of the mortgage. The makers of the notes are still liable upon them, and their payment may be enforced in an action at law; and to the rights of the corporation and the plaintiff, as receiver, the defendants, on payment of the dam-' ages sustained through the breach of trust, may be subrogated; and for that purpose the notes may be ordered to be surrendered to them, and I conclude that that would be the more reasonable and simple method for obtaining indemnity by the trustees.

Besides, as already stated, these persons are non-residents of this state and are alleged· to be insolvent. As the rule in question is founded in part upon convenience, the burden and inconvenience of proceedings to bring in non-residents, if it could be effectively done, should not be cast upon the plaintiff when the persons asked to be brought in are insolvent and have no property in this state out of which contribution could be enforced, and who cannot be made amenable to final process here in so far as it affects the person.

There is not, as is urged by the learned counsel for the defendants who demur, any misjoinder of causes of action. There is, in fact, but one cause of action alleged in the complaint, and considered as an equity action it was proper to join as defendants the legal personal representatives of the deceased trustee Willetts with the other defendants.

There must be judgment for the plaintiff on the demurrer with liberty to the defendants, however, to answer in twenty days on payment of costs.