ROME SAVINGS BANK, RESPONDENT, *v.* HENRY KRAMER AND OTHERS, APPELLANTS.

*Savings bank — right of, to invest its funds upon personal security — when a party contracting with a corporation cannot plead that the act was* ultra vires *— what constitutes a good consideration for a note.*

By its charter, and various other acts amendatory of the same and relating to its powers and duties, the plaintiff, a savings bank, was authorized to invest moneys deposited with it in certain specified securities, including public bonds and stocks and mortgages upon real estate, but not promissory notes. The trustees were also directed "to invest, as soon as practicable, in public stocks or public securities, or in bonds and mortgages, as provided in this act, all sums received by them beyond an available fund of not exceeding twenty-five thousand dollars, or not exceeding one-third of the total amount of deposits with said institution, at the discretion of said trustees, which they may keep to meet the current payments of said corporation, and which *may, by them, be kept on deposit, on interest or otherwise, or in such available form as the trustees may direct.*"

*Held,* that an available fund exceeding in amount $25,000, might, in the discretion of the trustees, be held to meet current payments, provided it did not exceed in amount one-third of the total amount of deposits.

That under the authority to keep the said available fund "on deposit, on interest or otherwise, or in such available form as the trustees may direct," the trustees might make loans therefrom upon personal security, *e. g.*, the promissory note of the borrower.

The plaintiff brought this action upon a joint and several promissory note, which was given to it, upon the surrender of two other notes held by the plaintiff as security for money loaned by it for the benefit of a church.

*Held,* that even if the plaintiff had no right to take the note, the defendants could not set up this fact as a defense to the action brought against them upon it.

That as, even if all the notes were void, the plaintiff would have had a right of action for the money actually loaned ; the surrender and extinguishment of that cause of action was a good consideration for the note in suit.

APPEAL from a judgment in favor of the plaintiff, entered on a verdict rendered at the Oneida Circuit, and from an order denying a motion for a new trial.

*W. Kernan*, for the appellants.

*Henry A. Foster*, for the respondent.

SMITH, P. J. :

The action is on a joint and several promissory note, dated 1st July, 1874, for $3,500, payable to the plaintiff or order on demand, with interest. The note was executed for the benefit of St. Joseph's church, in Rome, by the defendant Kramer and thirty-nine others, members of that church, and was given upon the surrender by the plaintiff of two other notes held by it as security for money loaned by the plaintiff for the benefit of said church, and upon which there was due at the time of the surrender the sum for which the note in suit was given. The note in suit was the only security for the debt, and is the only cause of action stated in the complaint.

The sole defense set up is that the note in suit was taken by the plaintiff as security in violation of the plaintiff's charter and of the general laws prohibiting unauthorized banking, and is therefore illegal and void.

The plaintiff was incorporated by virtue of chapter 324 of the Laws of 1851. By the sixth section of the act the general business and object of the corporation was declared to be, to receive on deposit " such sums as may be from time to time offered therefor by tradesmen, clerks, mechanics, laborers, minors, servants and others, and investing the same in the securities or stocks of this State, or of the United States, or in the stocks or bonds of any city authorized to be issued by the legislature of this State, or in such other manner as is authorized by this act." It was also provided in the same section that " no money deposited in the said institution shall be invested except in the securities or stocks mentioned in this section in opposition to the vote of any trustees ; but by the consent and approbation of all the trustees present at a regular meeting, amounts not exceeding three thousand dollars to any one individual may be loaned " on real estate, etc. And by the same section it was made the duty of the trustees of said corporation, " to invest, as soon as

practicable, in public stocks or public securities, or in bonds and mortgages, as provided for in this act, all sums received by them beyond an available fund of not exceeding twenty-five thousand dollars, or not exceeding one third of the total amount of deposits with said institution, at the discretion of the said trustees, which they may keep to meet the current payments of said corporation, and which may by them be kept on deposit, on interest or otherwise, or in such available form as the trustees may direct."

By the fourteenth section of the act the corporation was subjected to the provisions of the eighteenth chapter of the first part of the Revised Statutes, " as far as the same are applicable," among which are the provisions that no corporation shall possess or exercise any corporate powers, in addition to those expressly given, except such as shall be necessary to the exercise of the powers so given (1 R. S. § 3), and that no corporation, not expressly created for banking purposes, shall by any implication or construction, be deemed to possess the power of discounting bills, notes or other evidences of debt, etc. (Id., § 4.)

By chapter 150 of the Laws of 1865, the said act of 1851 was amended so as to allow the plaintiff to loan on bond and mortgage to the sum of $5,000 in one loan, and by chapter 845 of the Laws of 1868, savings banks were authorized to loan the moneys deposited with them in certain other specified securities, in addition to those mentioned in the former acts. The latter act was repealed in 1875. (Laws 1875, chap. 371, § 56.)

It cannot be contended successfully that the note in suit was obnoxious to the provisions of the restraining act. It was not " discounted " in the sense in which that term is used in banking operations, interest on the debt secured by it not having been exacted or paid in advance. (*City Bank* v. *Bruce*, 17 N. Y., 507, per SELDEN, J., p. 515.) In fact, no money passed in the transaction attending its execution, the note having been given and accepted as a substitute for other notes held by the plaintiff as a security for money previously loaned. But, treating the note in suit as given for a loan of money which the plaintiff had received on deposit, to be invested as required by the terms of its charter, the first question is, whether in loaning such money upon the security of the note in suit the corporation exceeded its powers.

If the power to loan on personal securities resides in the act, it must be looked for in the clause relating to the "available" fund, and there the respondents' counsel contends it is to be found. With the exception of that fund, the moneys deposited with the plaintiff are to be invested in the securities specified in the act, and promissory notes are not among them. And the specification of particular securities is an implied exclusion of all others. The main purpose of the plaintiff's charter was to create an institution in which clerks, servants, laborers, minors and the other class of beneficiaries mentioned in the act might deposit their savings and have them securely invested for their benefit. The object was not to furnish banking facilities for the community, nor primarily to create a profit for the corporation. As the success of the scheme was necessarily dependent on the security of the investments, the act was carefully guarded in that respect, and public stocks and securities, and bonds secured by real estate mortgages, were the only securities specified in which investments might be made. That being the case, was it intended to permit the "available" fund, which as will be seen hereafter the trustees might, in their discretion, increase to one-third of the total amount of deposits, to be invested in mere personal securities? The appellants' counsel contends that the fund was not to be invested at all; but was to be kept ready for use to meet current payments, and to that end to be kept either in the safe of the corporation itself, or on deposit on interest or otherwise. And he contends further, that the authority to "keep on deposit" is an authority, not to deposit with a private individual, upon the security of his certificate of deposit, or his promissory note payable on demand, but with a bank authorized by law to receive deposits. In 1847 the trustees of savings banks, who were authorized to make temporary deposits in any of the incorporated banks, were authorized to make such deposits with banking associations formed under the general banking law (chap. 478, § 1), and in 1865 with national banks. (Chap. 214, § 1.) And in 1854 all savings banks were authorized to deposit in trust companies. (Chap. 72, § 1.) Subsequently to the passage of two of the acts just above cited, and at the same session with the other, the charter of the plaintiff was amended, and the clause respecting the "available fund" was re-enacted without alteration. (Laws 1865, chap. 150.) The argu-

ment is plausible that by the words "on deposit," the act intended a deposit in one of the banks or trust companies in which savings banks were authorized to deposit by law.

The argument of the appellants' counsel, based upon the provisions above referred to and the general purpose of the act, is supported by the opinion of Mr. Justice VAN VORST at Special Term in *Paine* v. *Barnum* (59 How. Pr., 303), the opinion of Mr. Clifford A. Hand, the referee in the same case (vol. 4, Assembly Doc., 1879, p. 52), and the opinion of the late attorney general, Mr. Schoonmaker (Id., p. 44), in the case of the Syracuse Savings Bank.

The respondent's counsel urges in reply that by the language of the clause relating to the available fund the trustees may keep the fund "on deposit, on interest or otherwise, *or in such available form*" as they may direct; and that, keeping those words in view, a deposit with a responsible individual upon the security of his promissory note, payable on demand, is fully authorized, and that it not only meets all the requirements and purposes of the act in respect to the "available" fund, but is consistent with the general purpose of the act. The words "or in such available form, etc., cannot be said to be used merely to qualify the preceding words "on deposit." The use of the copulative "or" indicates that the words introduced by it are intended to furnish an alternative method, or methods, of keeping the fund that may be resorted to, in the discretion of the trustees, instead of the method previously pointed out. The word "or" was omitted in the charter of the Bond Street Savings Bank, which was in judgment in *Paine* **v.** *Barnum* (*supra*, 307, 308), but in the case of the Syracuse Savings Institution the language was identical with that of the charter of the present plaintiff. (Laws 1849, chap. 179.)

The argument of the respondent's counsel as to the interpretation of the words referred to derives much support from the provisions of an act passed in 1857, in relation to the several savings banks in the State, requiring them to make semi-annual reports to the superintendent of the bank department, and in such reports to state, among other things, "the amount, if any, *loaned on personal securities ;* \* \* \* the amount of cash on hand or on deposit in bank ; \* \* \* and the amount *loaned or deposited in any other manner.*" (Chap. 136, § 1.) This seems to be an express recogni-

tion by the legislature of the authority of savings banks at that time to make loans on personal securities, and to loan or deposit in other depositories than banks. Where is such authority to be found except in the clause relating to the "available" fund? This question of power was considered in the unreported case of *The Skaneateles Savings Bank* v. *Vary*, in this department in 1874, and it was there held that the plea of *ultra vires* and the restraining act constituted no defense to a promissory note given to the bank for a loan of money, although the note in that case was discounted and was made payable four months after date. The clause as to the "available" fund was the same in that case as in this. On the whole, we conclude that the legislature intended to authorize the trustees of the plaintiff to make loans from the "available fund" upon personal securities.

We are of the opinion that the trustees might, in their discretion, keep a sum not exceeding one-third of the total amount of deposits as a fund to meet current payments, although it exceeded $25,000. In doing so they were, of course, to exercise their judgment and to act in good faith with a view to keeping on hand so much as would probably be needed for the purpose and no more, so far as the same could be reasonably estimated. As the fund so reserved, including the loan to the defendants, was within the limit of one-third of the deposits, we reach the conclusion that it was not *ultra vires*.

We are relieved somewhat from the embarrassment of deciding a contention, so well supported by argument on both sides, by the fact that as the questions discussed were set at rest by the act of 1875 (chap. 371), and the act of 1882, which took its place (chap. 409), giving uniformity to the charters of all savings banks, like questions cannot again arise; and our decision, if erroneous, will not form a precedent for future cases.

But if the conclusion above reached is erroneous and the interpretation contended for by the appellants' counsel ought to prevail, it does not follow that the note in suit is void and cannot be enforced. The taking of it was not an act immoral in itself; it was not made illegal by statute in such a sense that the law will not enforce it, but will leave the parties as it finds them; nor is the note declared void by statute. All that can be said is, that the contract, of which the giving of the note was a part, was *ultra vires* on the part of the

corporation; but as the corporation has fully executed it, the defendants cannot set up the want of power to shield themselves from a just liability. As was said in *Whitney Arms Co.* v. *Barlow* (63 N. Y., 63), "the plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but on the contrary would accomplish a legal wrong."

Again, as we have said, no money was loaned when the note in suit was executed. It was given in exchange for other notes then held by the bank, executed by other persons, which were then canceled and surrendered. Those notes were given for a loan of money, and even if they were *ultra vires* and void, the bank had a good cause of action against the makers of them for the money loaned. (*Pratt* v. *Short*, 79 N. Y., 437; *Pratt* v. *Eaton*, Id., 449.) The surrender and extinguishment of that cause of action was a good consideration for the note in suit, and this view of the case avoids the defense set up by the appellants.

The judgment and order should be affirmed.

HARDIN and BARKER, JJ., concurred

Judgment and order affirmed.