GREENFIELD SAVINGS BANK *vs.* ROBERT ABERCROMBIE & others.

Franklin.    December 13, 14, 1911. — February 29, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Savings Bank,* Duties and liability of members of investment committee. *Equity Pleading and Practice,* Bill. *Limitations, Statute of.*

The members of the investment committee of a savings bank in this Commonwealth are liable to the bank and its depositors for losses incurred from the making of loans largely in excess of the limit imposed by St. 1894, c. 317, § 21, cl. 1, of which they might have known "by the exercise of a reasonable degree of care and prudence."

In a bill in equity by the bank commissioner in the name of a savings bank against the members of the investment committee of the bank for losses incurred from loans made in violation of St. 1894, c. 317, §§ 21, 24, certain allegations, which were not essential to the liability of the defendants and merely set forth the circumstances in the light of which their conduct was to be judged, were held to be in no way repugnant to the ground for relief stated by the bill.

The requirements of St. 1894, c. 317, §§ 21, 24, in regard to the investment by savings banks in mortgages of real estate, to the amount there limited, that they shall be first mortgages, that "no loan on mortgage shall be made except upon the report of not less than two members of the board of investment, who shall certify to the value of the premises to be mortgaged, according to their best judgment, and such report shall be filed and preserved with the records of the corporation," and that "all applications for loans shall be made in writing, through the treasurer of the corporation, who shall keep a record thereof," are mandatory and not merely directory, and, although a loan made without the

observance of these requirements may be valid as between the bank and the borrower or as to third parties, its making is beyond the powers of the investment committee of the bank as between them and the bank and its depositors, and constitutes a wrongful diversion of the funds of the bank, for which the members of such committee are liable.

The powers of the investment committee of a savings bank in relation to the bank and its depositors are limited not only by the provisions of the statutes but also by the terms of the by-laws of the bank.

In a suit in equity by the bank commissioner in the name of a savings bank against the members of the investment committee of the bank for losses incurred from loans made in violation of St. 1894, c. 317, §§ 21, 24, the defendants stand in the relation of trustees toward the bank and its depositors, and consequently the statute of limitations begins to run against the bank only from the time that it learned of the defendants' wrongdoing.

SHELDON, J.  This bill is brought in the name of the plaintiff by the bank commissioner, who, it is averred, has taken possession of the business and property of the plaintiff under the provisions of St. 1910, c. 399, and is now administering its affairs. The defendants were five of the seventeen members of the plaintiff's board of trustees, constituted its investment committee, and two of them were respectively its president and vice-president. The bill alleges that the defendants in violation of their duties have committed many acts of misconduct specifically set out in the bill, and seeks to hold them personally liable for large losses on certain specified loans of the bank's money alleged to have been made by them on certain described parcels of real estate. It is averred that in making these loans the defendants violated the statutes then in force (St. 1894, c. 317, §§ 21, 24 *) and also the by-laws of the plaintiff; and the particulars of such violations are set out in detail. It is charged that these investments were made contrary to law and in excess of the authority of the defendants, and that they resulted in the loss to the bank of large sums of money. The details as to the making of each one of these investments and as to the subsequent dealings of the defendants therewith are stated in the bill, and the alleged wrongful acts of the defendants and the losses resulting therefrom are fully set out. According to the averments, each of these loans was largely in excess of the value of the security taken, "as the defendants well knew, or by the exercise of a reasonable degree

---

* Now incorporated in St. 1908, c. 590, § 68, as amended by St. 1909, c. 491, § 8.

of care and prudence might have known;" most of them were made without any report or certificate of two members of the board of investment (St. 1894, c. 317, § 21, cl. 1); in many instances no written applications for the loans were made and recorded, as required by § 24 of the same act; and in some instances money was lent on second mortgages. It is alleged also that the rules (which are specified in the bill) adopted by the board of trustees were not complied with in the respects specified in the bill. It is alleged that these loans were made to or for one Rich and one Dowlin for the purpose of assisting them in certain real estate transactions in which the defendants had an interest. Further manipulations of some of these properties are averred to have been made by the defendants by causing deeds of them to be given and by making foreclosures followed by other deeds, resulting in the defendants taking for the bank new and larger mortgages upon the same properties which had been found to be insufficient security for the original and smaller loans.

Each of the defendants has demurred to the bill * on many different grounds. It scarcely seems necessary to discuss these separately. It will be enough to consider the objections which have been stated in the elaborate argument made for the defendants.

They contend in the first place that the members of the investment committee of a savings bank, acting in good faith, are not liable for losses resulting from errors of judgment attributable to mere negligence in making loans within the scope of their authority. They say that the averments of the bill are not sufficient to show that they acted unlawfully by taking loans to an excessive amount upon property of insufficient value. Those averments are in substance that the loans were largely in excess of the statutory limit, "as the defendants well knew, or by the exercise of a reasonable degree of care and prudence might have known." It follows of course from the recognized rules of equity pleading that such an averment in the alternative does not charge actual knowledge, but simply that the defendants by the exercise of reasonable care and prudence ought to have known the fact. This they say is not sufficient; and they rely upon a large number

---

* The bill, as amended, was filed in the Supreme Judicial Court on May 24, 1911, and the case was reserved by *Morton*, J., upon the demurrers to the amended bill for determination by the full court.

of familiar decisions in which it has been held that the directors
or managers of a business corporation conducted for profit are
not to be made responsible for losses due to a mere error of judg-
ment, where there has been an honest exercise of judgment.   It
is not necessary to refer to these cases in detail.   They are almost
without exception statements or illustrations of the rule laid
down in *Lyman* v. *Bonney,* 118 Mass. 222, and *Overend & Gurney
Co.* v. *Gibb,* L. R. 5 H. L. 480.   But these and similar decisions
are not applicable to the case of a savings bank under the laws
of this Commonwealth.   As was said in *Gilson* v. *Cambridge
Savings Bank,* 180 Mass. 444, 446, we have an "elaborate statu-
tory system for the government and regulation of savings banks,
which is intended to protect the interests of depositors."   As to
these depositors, for the encouragement of thrift by the allow-
ance of interest upon small savings, they approximate somewhat
to the character of charitable institutions.   They are designed
to help the poorer members of the community to help themselves
by giving them an opportunity to make their small savings pro-
ductive, and thus to confer upon them a greater and more lasting
benefit than in many cases can be derived from mere eleemosynary
assistance.   Accordingly definite and rigid provisions have been
made by our statutes for the administration of savings banks.
Not to go outside the time here in question, see St. 1894, c. 317,
§§ 13, *et seq.*   It is not without significance that in this statute, as
in former and subsequent ones, the governing board of officers is
given the name of trustees.   Careful provisions are prescribed
also for the investment of the deposits that may be received; and
it is manifest upon the most cursory reading that the dominant
purpose of the Legislature has been to provide in this way for
the safety of the money entrusted to savings banks and to hold
the officers entrusted therewith to a strict accountability.   As
was said in *Lewis* v. *Lynn Institution for Savings,* 148 Mass. 235,
243, "the fundamental idea has never been departed from, that
all the funds and investments of a savings bank are held exclu-
sively for the benefit and security of the depositors.   This idea
was, and still is, the corner-stone of the whole system. . . . To
others, to third persons, the corporation can incur liabilities, in
contract or in tort, for which the funds in its hands will be re-
sponsible.   But to the depositors themselves, the undertaking

of the corporation is that it will receive and combine the deposits, and manage and use them to the best practical advantage, according to the judgment of the trustees, and give to the depositors in just proportion among themselves the result of such management." In other words, the savings bank and its managing officers or trustees are held to the same duty as ordinary trustees of a direct trust. See *Newark Savings Institution case,* 1 Stew. 552. For honest errors of judgment, while acting with ordinary skill and prudence, measured according to the demands of the duties or business which they have taken upon themselves, they are not to be held liable; but they cannot excuse themselves from the consequences of their misconduct or of their ignorance or negligence by averring that they have failed merely to exercise ordinary skill, care and vigilance. And so are the decisions as to the trustees or managing officers of savings banks in New York and New Jersey, in which such banks are not commercial institutions having a capital stock and conducted in whole or in part for the gain of their stockholders, but occupy the same position and are intended to serve the same beneficent purposes as is the case in this Commonwealth. It is held that the relation between the managing officers and the depositors, or the bank as representing them, is that of trustees and *cestuis que trust.* *Hun* v. *Cary,* 82 N. Y. 65, in which it was held also that where loss has occurred from the failure of such a trustee to exercise ordinary care and judgment, he cannot excuse himself by claiming that he did not possess those qualities; for by voluntarily assuming the position he undertook that he did possess and would exercise them. *Williams* v. *McKay,* 13 Stew. 189. *Williams* v. *Reilly,* 14 Stew. 137. *Dodd* v. *Wilkinson,* 15 Stew. 647, affirming *S. C. nom. Wilkinson* v. *Dodd,* 13 Stew. 123. And see *In re Liverpool Household Stores Association,* 59 L. J. Ch. (N. S.) 616. As was said by Beasley, C. J., in *Williams* v. *McKay, ubi supra,* "The equitable rule which is applicable to persons holding official positions such as were held by these defendants, is not in doubt. The duty belonging to such a situation is a plain one, — to care for the moneys intrusted to them in the manner provided in the charter, and to exercise ordinary care and prudence in so doing. It is true that the defendants were unpaid servants, but the duty of bringing to their office ordinary skill

and vigilance was none the less on that account, for to this extent there is no distinction known to the law between a volunteer and a salaried agent. These defendants held themselves out to the public as the managers of this bank, and by so doing they severally engaged to carry it on in the same way that men of common prudence and skill conduct a similar business for themselves. This is the measure of the responsibility of officers of this kind." This is the same rule of duty to which other trustees have been held, that they must "exercise a sound judgment and a reasonable and prudent discretion." *Davis, appellant,* 183 Mass. 499, 502. *Ashley* v. *Winkley,* 209 Mass. 509. *Pine* v. *White,* 175 Mass. 585, 590. The same rule has been applied to officers and managers of other financial institutions, somewhat similar in character to savings banks; and the doctrine is applicable *a fortiori* to the case at bar. Types of such decisions are *New Haven Trust Co.* v. *Doherty,* 75 Conn. 555, and *Wallace* v. *Lincoln Savings Bank,* 89 Tenn. 630.

We do not regard the allegation in the bill that the defendants "received salaries and fees from the complainant corporation for acting as its officers and trustees and members of its Finance Committee," as being in itself sufficient to hold them personally responsible for official misconduct and breaches of duty. But the averment is not made for that purpose. This is one of the existing circumstances in the light of which their conduct is to be judged. It is not necessary to aver the amount of their compensation or to show its adequacy. This allegation does not weaken the rest of the bill.

The same things may be said of the averment that the loans complained of, or some of them, were "made to assist in the real estate transactions of said George N. Rich, in which transactions said respondents were interested." This also bears upon the character of the defendants' conduct, upon the honest exercise of their judgment and their good faith. And the averments as to the personal dealings of some of the defendants with Dowlin and Rich, and as to the inducements, commissions and gifts given by Dowlin and Rich to two of the defendants, are proper for the same reasons. We see nothing here repugnant to the rest of the bill. Assuming that it may be singled out for a separate objection, the demurrer to it cannot be sustained.

The statute already referred to (St. 1894, c. 317, §§ 21, 24) requires also that only first mortgages of real estate shall be taken, and that "no loan on mortgage shall be made except upon the report of not less than two members of the board of investment, who shall certify to the value of the premises to be mortgaged, according to their best judgment, and such report shall be filed and preserved with the records of the corporation;" and that "all applications for loans shall be made in writing, through the treasurer of the corporation, who shall keep a record thereof." The bill avers that the defendants failed to comply with these requirements. We have no doubt that these statutes are mandatory and not merely directory. They are part of a series of careful provisions made to secure the interests of depositors and to make it certain that the conduct of trustees in making loans upon mortgages should be not only honest and careful, but manifestly so, done with the concurrence of other officers, and spread upon the records of the corporation. These are restrictions placed by the Legislature upon the power of the defendants. A loan made without the observance of these requirements may be valid as between the bank and the borrower or as to third parties; *Gerrity* v. *Wareham Savings Bank*, 202 Mass. 214; but as between the defendants on the one side and the bank and its depositors on the other side their conduct in making loans in such a manner is *ultra vires*. It is a wrongful diversion of the funds of the bank. And the decisions are practically uniform that for such a wrongful diversion, made in excess of their authority and in defiance of the statutory requirements, they are to be held responsible. The decision in *Cocker* v. *Quayle*, 1 R. & M. 535, rests on this ground, although there it was the directions of a private trust, not the requirements of a statute, that were violated. So in *Worcester City Missionary Society* v. *Memorial Church*, 186 Mass. 531. Even the decisions by which the directors of a private business corporation have been exempted from liability for bare errors of judgment or for mere ordinary negligence in the exercise of their authorized functions have almost invariably refused, when the question has been considered, to extend that exemption to acts which were *ultra vires* or in violation of law. See for example *Overend & Gurney Co.* v. *Gibb*, L. R. 5 H. L. 480, 487; *Turquand* v. *Marshall*, L. R. 4 Ch. 376, 386; *In re Faure Electric Accumulator*

*Co.* 40 Ch. D. 141; *In re New Mashonaland Exploration Co.*
[1892] 3 Ch. 577; *Marzetti's case,* 42 L. T. (N. S.) 206; *Grimwade*
v. *Mutual Society,* 52 L. T. (N. S.) 409, 416; *In re Liverpool House-
hold Stores Association,* 59 L. J. Ch. (N. S.) 616; *Cooper* v. *Hill,*
94 Fed. Rep. 582; *Citizens Building, Loan & Savings Association*
v. *Coriell,* 7 Stew. 383; *Stone* v. *Rottman,* 183 Mo. 552. For such
a wrongful diversion of the funds of the savings bank, followed by
and resulting in a total or partial loss of the money thus wrong-
fully withdrawn, the defendants are *prima facie* responsible. *New
Haven Trust Co.* v. *Doherty,* 75 Conn. 555. *Paine* v. *Barnum,* 59
How. Pr. 303. *Paine* v. *Irwin,* 59 How. Pr. 316. *Williams* v.
*Riley,* 7 Stew. 398. *Dodd* v. *Wilkinson,* 15 Stew. 647. *Williams*
v. *McDonald,* 15 Stew. 392. *Thompson* v. *Greeley,* 107 Mo. 577.
*National Bank of Commerce* v. *Wade,* 84 Fed. Rep. 10. *Fyler* v.
*Fyler,* 3 Beav. 550. *In re Sharpe,* [1892] 1 Ch. 154. *In re Lands
Allotment Co.* [1894] 1 Ch. 616.

The powers of the defendants were likewise, as between them-
selves and the bank or its depositors, limited by the terms of its
rules and by-laws. This comes under the same general doctrine
as limitations upon a trustee by the creator of a private trust,
which already have been referred to. None of these matters
affords ground for demurrer. As to them, the averments of the
bill are sufficient. It was not necessary to allege the amounts
of the assessors' valuations of the different parcels of real estate
mortgaged, or to negative by anticipation any excuse or justifi-
cation that the defendants may be able to set up for their illegal
acts.

But the defendants insist that the statute of limitations is a
bar to any remedy for most of their wrongful acts, because as to
most of them more than six years had elapsed after their wrongful
diversion of the plaintiff's money before the bill was filed. But
this contention overlooks the fact, which has been sufficiently
shown, that these defendants stood as to the bank and its deposi-
tors in the position of trustees of a direct trust. In such a case
the statute of limitations does not begin to run against the *cestuis
que trust* until they have learned of the trustee's wrongdoing or
of his practical repudiation of the trust and of the duties thereby
imposed upon him. *Davis* v. *Coburn,* 128 Mass. 377. *Jones* v.
*McDermott,* 114 Mass. 400. *Boxford Religious Society* v. *Harri-*

*man,* 125 Mass. 321. *Potter* v. *Kimball,* 186 Mass. 120. Instances of the application of the rule to such cases as the one now before us are sufficiently numerous. *Williams* v. *McKay,* 13 Stew. 189, reversing *S. C. nom. Williams* v. *Halliard,* 11 Stew. 373. *Williams* v. *Riley,* 7 Stew. 398. *Ellis* v. *Ward,* 137 Ill. 509. *National Bank of Commerce* v. *Wade,* 84 Fed. Rep. 10. *Brinckerhoff* v. *Roosevelt,* 143 Fed. Rep. 478. *In re Sharpe,* [1892] 1 Ch. 154. In most of the cases relied on by the defendants the case was either governed directly by statute, as in *In re Lands Allotment Co.* [1894] 1 Ch. 616, 631, and *Mason* v. *Henry,* 152 N. Y. 529, or it was held that no direct trust relation existed between the parties. Such cases need not be considered. So far as they differ from our conclusions we have not been willing to follow them. Nor is it now necessary to determine whether a fraudulent concealment of the cause of action is sufficiently charged against the defendants.

We cannot say as matter of law that the alleged foreclosures of the mortgages or the other dealings with the mortgaged properties, or any entries that may have been made on the plaintiff's books and records show knowledge in the plaintiff of the defendants' wrongdoings. See as to this *Wallace* v. *Lincoln Savings Bank,* 89 Tenn. 630. The bill expressly avers that the plaintiff had neither such knowledge nor the means of acquiring it until shortly before the bringing of the bill. We find nothing in the allegations necessarily repugnant to this averment.

The sixteenth paragraph * of the bill might not of itself show any independent cause of action against the defendants, but like some other averments which have been considered, the circumstance alleged may throw light upon some of the misconduct complained of. It is proper to give the defendants notice of the fact that this is one of the matters relied on by the plaintiff in determining the character of their acts. It is not repugnant to the seventh paragraph † of the bill.

There is no such repugnance or uncertainty in other parts of

---

* This paragraph alleged that with the approval and on the vote of the defendants unlawful dividends were made to the depositors for the purpose of concealing the losses on the unlawful loans described in the bill.

† This paragraph set forth the by-laws relating to the duties of the trustees and of the financial committee.

the bill as to justify us in calling it bad.   The grounds of demurrer which have not been specifically dealt with have all been examined; the able argument made by the counsel for the defendants and the supplementary brief which has been filed have been carefully considered: and we are satisfied that the order must be

*Demurrer overruled.*

*F. H. Nash,* (*T. W. Streeter* with him,) for the plaintiff.
*B. B. Jones,* (*W. H. Brooks* with him,) for the defendants.