WILLIAM J. HOLDEN & another *vs.* ABBY S. PHELPS & another.

Middlesex.   January 26. — April 6, 1883.

The treasurer of a savings bank, by virtue of his office merely, has no implied authority to assign to a purchaser a mortgage belonging to the bank ; and the fact that, by verbal consent and under direction of the investment committee of the bank, he had assigned other mortgages relating to other estates, is not sufficient to give him a general authority to assign mortgages, or to entitle the assignee to infer that he had such authority, even if this fact was known to the assignee.

A bill in equity may be maintained, by the receivers of a savings bank, the treasurer of which has, without authority, assigned a mortgage owned by the bank, to restrain the assignee, who was a depositor in the bank, from enforcing a power of sale in the mortgage, and to compel him to surrender and cancel the assignment, although, upon receiving the assignment, he released the debt of the bank to him as such depositor.

BILL IN EQUITY, filed October 16, 1880, by the receivers of the Reading Savings Bank, to restrain the defendants from enforcing the power of sale in a mortgage assigned to them by Nathan P. Pratt, the treasurer of said bank; and to compel them to surrender and cancel the assignment.   Hearing before *Field, J.*, who reserved the case for the consideration of the full court ; such decree to be entered as justice might require.   The facts appear in the opinion.

*S. Bancroft*, for the plaintiffs.

*H. Wardwell*, for the defendants.

DEVENS, J.   The questions of the authority which the treasurer of the Reading Savings Bank possessed by virtue of his office, and that which he had under the by-laws of this institution, have heretofore been fully considered.   He had no right to make the assignment of the note and mortgage sought by the plaintiffs, either by virtue of his general powers and duties, or under the by-laws, or by the authority of any recorded vote of the bank.   *Commonwealth* v. *Reading Savings Bank*, 133 Mass. 16.   *Holden* v. *Upton*, 134 Mass. 177.   *Holden* v. *Hoyt*, 134 Mass. 181.

The only fact which can bear upon this inquiry, not disclosed in those cases, is, that it here appears that he had, by verbal consent and under the direction of the investment committee,

assigned seven mortgages relating to three other and distinct estates. But this permission was not sufficient to invest him with a general authority to assign mortgages, nor to entitle the defendants to infer that he had such authority, even if this fact had been known to them. It is not important that numerous discharges and releases of mortgages appear to have been made by him. He had by the by-laws authority to discharge mortgages on payment thereof. A savings bank is not established for the purpose of dealing in notes, mortgages or other securities. While from time to time it must dispose of these as it becomes desirable to raise money or change investments in accomplishing the objects for which it is formed, this is not a matter within the ordinary duty of the treasurer, and it is not unreasonable that those purchasing notes and mortgages should see that such purchase is made and the security transferred to them by authority of the board of investment.  *Holden* v. *Upton, ubi supra.*

The argument of the defendants, that, as they were depositors and thus creditors, and that, as it was a part of the duty of the treasurer to pay depositors, he was not bound to pay in cash, rather than in any securities or property of the bank which might be in his possession, and thus might lawfully transfer this mortgage, treats the treasurer as having the right absolutely to dispose of the invested property of the bank, if he sees fit thus to satisfy its obligations, and dispenses entirely with the protection intended by placing it under the care of the board of investment. While it is the duty of the treasurer to pay certain obligations, if he has not the means of doing so with the cash at his disposal, proper provision must be made by the board of investment. He does not thereby acquire the right to use and dispose of the invested property of the bank, any more than he would that of a third person.

It is further the contention of the defendants that, even if it be held that the treasurer had no power to make this assignment, the plaintiffs cannot now disavow his act and claim a reassignment of the mortgage ; or that, if in any event they may do so, they can only do this on payment to the defendants, with interest, of the full sum for which they discharged the debt of the bank to them. It has heretofore been held, in cases arising out of this failure, where the treasurer without authority had sold

and assigned mortgages to persons who had paid full value for them, that such persons could be compelled to reassign to the receivers of the bank. *Holden* v. *Upton*, and *Holden* v. *Hoyt*, *ubi supra*. In those cases, the amounts received by the treasurer had not gone into the funds of the bank, and the bank had derived no advantage from the transaction. The distinction claimed by the defendants here is that there was a full consideration moving from them to the bank, and not to the treasurer. The bank had the defendants' money, and was indebted to them to an amount equal to that of the mortgage, and they cancelled their indebtedness and surrendered their deposit books. If the bank were in any respect richer by this transaction, if it had added to its funds from those of the defendants, it would be equitable that it should restore these to them to the extent by which its means were thus augmented. It received nothing in reality, nor have the defendants parted with anything except nominally. Had they discovered, after the transaction and on the same day, the wrongful nature of this assignment, they could have brought suit at once for the amount due them, (assuming for the moment that there was no other objection to such suit than this transaction,) and relinquished the worthless and unauthorized assignment. This was simply void, and the bank should not be compelled to pay the debt originally due from it, because, in order to obtain that which the treasurer had no right to assign, the defendants consented to acknowledge payment of their debt. When the assignment is returned, and the defendants are allowed to stand as creditors, both parties are in their original position.

It is argued that this is not so ; that, if the defendants had not taken this mortgage, they could have had the cash for their debt; that they had proposed to withdraw their deposit and invest the amount in a mortgage, and, at the suggestion of the treasurer, accepted this mortgage, which was, alike to them and the bank, of the same value as cash. It may be that the defendants could then have withdrawn their deposit, as the bank did not fail until some months afterwards. It may be that an instant pressure for their money would have brought about immediately the failure, and the development of the frauds of the treasurer, which subsequently occurred. Assuming that they then could

and would have withdrawn their deposit, they were prevented from doing so by an act of the treasurer for which the bank cannot be made responsible, as it was unauthorized by it and without the scope of the treasurer's authority. Because the defendants might find themselves in a better position but for such an act, a responsibility cannot be forced upon the bank that does not belong to it.

Those cases which hold that, where money is received under a contract made without authority, or in violation of law, the obligation arises to refund it to the party from whom it was received, if he seeks only to recover it and not to enforce such contract, have no application. *White* v. *Franklin Bank*, 22 Pick. 181. *Morville* v. *American Tract Society*, 123 Mass. 129. *Dill* v. *Wareham*, 7 Met. 438. Even in such a case it must appear that the defendant has had the actual and beneficial use of such money ; and in *Railroad National Bank* v. *Lowell*, 109 Mass. 214, it was decided that the action would not lie, where money, obtained without authority from a bank by a city treasurer, was put into a drawer by him with money of the city and paid out for the city debts, the treasurer being at that time a defaulter to the city to an amount larger than that drawn from the bank.

The savings institution should not be prevented from treating a transaction as void, because, but for it, it could have been subjected to a rightful demand ; nor should a wrongful transaction be validated, because, but for it, such a demand would have been persisted in.

It is true that, if this claim for the amount of their deposit is maintained by the defendants, the remaining depositors are no worse off than they would have been had the defendants been paid in cash ; but it would be in violation of the spirit of the laws governing these institutions to permit the treasurer to pay the depositors by transfer of the invested property of the bank. Such authority would be conferred upon him if the bank could only obtain the return of its property by payment of a sum equal to the debt which by this proceeding the treasurer had wrongfully thus assumed to liquidate.

For these reasons, a majority of the court are of opinion that there should be a                *Decree for the plaintiffs.*