EDWARD F. LEBER & another *vs.* JOHN M. GROSVENOR
& another.

SAME *vs.* SAME.

Suffolk.　November 14, 1901. — November 15, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Contract,* Construction, Performance.

An agreement, to "introduce, sell and prosecute the introduction and sale of" certain goods and "to use due diligence in the introduction and sale" of the goods, is complied with if the goods are put on the market and brought to the attention of the public, and an effort is made to induce the public to purchase them. Undertaking to introduce the goods does not mean to warrant that they will become popular with the public and will be purchased generally.

TWO ACTIONS OF CONTRACT to recover respectively $402 and $251.40 paid for advertising the defendants' Bel-cap-sic plasters in the Argentine Republic. Writs dated respectively June 2, 1899, and November 13, 1900.

The respective answers set up a contract in writing, to which the agreement under which the plaintiffs had done the advertising had been annexed, in which the plaintiffs agreed to introduce the defendants' plasters in the Argentine Republic, Uruguay and Paraguay, and alleged that the plaintiffs had failed to perform their agreement and had not introduced the plasters in the republics named and had made no sales therein, and claimed damages in recoupment for the plaintiffs' breach of their agreement.

At the trial in the Superior Court, before *Mason*, C. J., it appeared, that the contract relied on by the defendants was as follows:

"Memorandum of agreement made this 20th day of June, A. D. 1898, by and between J. M. Grosvenor & Co., of the city of Boston and State of Massachusetts, parties of the first part, and Leber & Meyer, of the city and State of New York, parties of the second part, Witnesseth: Whereas, the parties of the second part are desirous of securing the sale of certain goods manufactured by the parties of the first part in the Argentine

Republic, Uruguay, and Paraguay, in South America, it is agreed that parties of the second part, through their agents and representatives located in Buenos Ayres, will introduce, sell and prosecute the introduction and sale of said goods in the foregoing Republics. And in consideration of the introduction and sale of said goods as above-stated, the parties of the first part hereby agree to grant to the parties of the second part the exclusive right to act as their selling agents in the foregoing Republics for the period of 18 (eighteen) months from date hereof, and in the event of the parties of the second part selling and paying for a minimum amount of $4,000 (four thousand dollars) worth of said goods within the above-stated eighteen months, then, at the option of the parties of the second part, this contract may be renewed for a further period of 5 (five) years, *provided*, that in each one year the amount of sales secured by the party of the second part must reach the minimum of $5,000 (five thousand dollars). The parties of the first part agree to deliver Bell-cap-sic Plasters free on board steamers at New York or Brooklyn docks at the agreed prices of $15 per gross. All orders from said territory, through their authorized agents, the parties of the second part agree to place with the parties of the first part, and to pay therefor the above stated prices in current funds of the United States. Said payments to be made in all cases within 10 (ten) days from date of invoice; it being understood that for such cash payments there shall be a discount of one (1) per cent allowed on the invoice. The parties of the second part, in accepting the selling agency as herein stated, agree to use due diligence in the introduction and sale of the aforesaid goods, and to bear all expenses, of any nature, incurred or found necessary in the prosecution of said work, without recourse upon the parties of the first part. The parties of the first part, however, as an aid to the parties of the second part, agreed to subscribe for a specified amount of advertising, as mentioned in another blank, also signed and attached hereto. It is distinctly understood and agreed that the parties of the second part will not handle competing goods of any other make during the life of this agreement."

Here followed the attesting clause and the signatures of the plaintiffs and the defendants.

One De Grys testified that he had charge of the plaintiffs' branch house in Buenos Ayres in the Argentine Republic, but was not now in their employ; that in October, 1898, he received from the plaintiffs six gross of the defendants' plasters, and paid freight and duties which nearly equalled their cost; that he caused the advertising alleged in the declarations to be done, and in addition, at the plaintiffs' expense, caused further advertising to be made by handbills and circulars at a cost of $350; that he in person canvassed the wholesale trade at the expense of his principals, and employed two salesmen to canvass the retail trade, and urged the dealers to take the plasters on consignment and made various consignments and distributed various samples; that at the end of the year most of the consignments were sent back, the trade complaining that the goods did not take with the people, and that they could not sell a second plaster to the same customer, and there were complaints that the plasters were of poor quality and that they did not stick. The trade likewise told him that such things went slow down there, and that very likely if he would wait patiently and increase his advertising he would succeed, and that goods down there had to be pushed more than a year and much advertising done. That on receiving back the consignments at the end of the year, it was found that less than a gross had been sold, and that he then wrote to his principals that he could not introduce them. He testified further as follows: " *Q.* What do you mean by introducing articles? *A.* I mean making every effort a man can make. *Q.* Then you mean by introducing goods, trying to introduce them? *A.* I mean to create a demand in such way that they can be introduced."

There was further testimony that the plaintiffs continued their efforts for the full period of eighteen months, and that altogether forty-four dozen were sold, and that in July, 1901, the defendants ordered the return of the plasters unsold, and they were returned. The plaintiffs put in evidence samples of the plasters at the trial.

The defendants asked the judge to rule that the plaintiffs had broken their contract by failing to introduce the plasters, and could not recover, and that the defendants were entitled to recoup their damages for such breach, but the judge refused so

to rule, and found that the plasters had been introduced, and found for the plaintiffs in both cases in the amounts claimed; and the defendants alleged exceptions.

*J. D. Thomson,* for the defendants.

*H. E. Fales,* for the plaintiffs.

BY THE COURT. The undertaking to introduce the defendants' goods did not mean that the plaintiffs warranted that those goods should become popular with the public and should be purchased generally. What it meant was shown by the specific agreement "to use due diligence in the introduction," etc. It was satisfied if the goods were put on the market, brought to the attention of the public, and an effort made to induce the public to purchase them. There was evidence warranting a finding that this was done.

*Exceptions overruled.*