DELIA S. GILSON vs. CAMBRIDGE SAVINGS BANK.

Middlesex.    November 20, 1901. — February 26, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ..

*Contract*, Validity, Construction.   *Savings Bank.*

A contract made by a savings bank to lend money on a mortgage without a re-
port in writing of not less than two members of the board of investment as
required by St. 1894, c. 317, § 21, cl. 1, cannot be enforced or made the founda-
tion of a claim for damages.

In an agreement for a loan to be made upon a mortgage of land, in the absence of
an express provision on the subject, there is always an implied agreement that
the mortgage shall convey a perfect title.

An application to a savings bank for a loan on a mortgage contained the following
language : " that the title to the above mentioned real estate is to be examined
and the papers prepared by one of the solicitors of the bank ; and that such title
will not be considered satisfactory, if the estate is held subject to any conditions
or restrictions.   The expense of examining the title, whether finally accepted
or rejected, is to be borne by the undersigned."   The solicitor of the bank re-
ported that the title was not satisfactory for the reason that there was an out-
standing tax title whose validity could not be determined without resorting to
oral testimony, and that a mortgage incumbrance was released by a deed pur-
porting to be executed by an attorney of the mortgagee, and it did not appear
that a power of attorney had been acknowledged and recorded.   The bank re-
fused to make the loan.   *Held,* that the language above quoted in the connec-
tion in which it was used meant, that the title must be such as the solicitor of
the bank acting in good faith in the exercise of his judgment deemed good,
and that the report of the solicitor that the title was not satisfactory for the
reasons above stated justified the bank in refusing to make the loan.

CONTRACT for alleged breach of an agreement to lend $5,400
to the plaintiff upon a mortgage of certain real estate in Somer-
ville belonging to the plaintiff.   Writ dated October 6, 1900.

In the Superior Court, before *Braley*, J., judgment was given
for the defendant upon agreed facts ; and the plaintiff appealed.

By the agreed facts, it appeared, that the plaintiff's first appli-
cation was for a loan of $6,000.   This application was referred
to two members of the board of investment.   These members
reported orally to one Allen, who in the absence of the treasurer
was performing the duties of that officer, that they were in favor
of making the loan on a new application for $5,400 instead of .
$6,000, to be made upon the bank's form of application, and the
treasurer wrote to the plaintiff's agent requesting him to have

the plaintiff sign an application in accordance with this proposition on one of the bank's blanks, which he enclosed for the purpose. The plaintiff did so, and sent it to the bank. No action was taken by the board of investment as a board upon the new application after it was signed.

Allen wrote to the plaintiff's agent as follows: "Dear Sir: Our Board of Investment has examined the estate of Mrs. D. S. Gilson, a six apartment house with 5256 Gilson Terrace, off Linden Ave., Somerville. The Board value it at $9,000 and are willing to loan $5,400. Yours respectfully, Oscar F. Allen, Treas."

Later he wrote to the plaintiff as follows: "Mrs. Delia S. Gilson, Dear Madam, Hon. Wm. B. Durant one of the conveyancers of this bank, has had conversation with members of our Board of Investment, and as it appears that the title to the estate is not perfectly satisfactory. The bank therefore decline to make the loan. Yours respectfully, Oscar F. Allen, Treas."

Allen was not a member of the board of investment nor a trustee. One of the two members of the board, to whom the loan was referred, never reported on the loan, except by saying verbally to the treasurer, that he was in favor of it, and never signed any estimate of the value of the property as required by law, nor did any two members of the board sign any such estimate nor any written report upon the value.

The plaintiff's application for the loan contained the provision as to examination and approval of the title to the plaintiff's land by one of the solicitors of the defendant, which is quoted by the court. The substance of the solicitor's report, upon which the defendant refused to make the loan, also is stated by the court.

*L. R. Wentworth*, for the plaintiff.

*W. B. Durant*, for the defendant.

KNOWLTON, J.  This is an action to recover damages for the breach of an alleged contract to lend the plaintiff money on the security of a mortgage of real estate. In the St. 1894, c. 317, § 21, cl. 1, is the following provision in regard to investments of savings banks: "No loan on mortgage shall be made except upon the report of not less than two members of the board of

investment, who shall certify to the value of the premises to be mortgaged, according to their best judgment, and such report shall be filed and preserved with the records of the corporation." This is a part of our elaborate statutory system for the government and regulation of savings banks, which is intended to protect the interests of depositors. All persons dealing with savings banks are bound to take notice of the limitations of their powers. Under this statute no savings bank in this Commonwealth has authority to make a loan except upon such a report, embodying the required certificate. The law recognizes no difference in this particular between making a loan and making a contract for a loan. What would be the effect of this provision upon a contract executed in violation of it it is unnecessary now to decide. We simply hold that an executory contract to lend money, made by a savings bank without such a report, cannot be enforced or made a foundation of a claim for damages. Letters of the treasurer and oral communications of members of the board of investment are of no effect, unless they are authorized by law. *Commonwealth* v. *Reading Savings Bank,* 133 Mass. 16. *Holden* v. *Phelps,* 135 Mass. 61. *Jewett* v. *West Somerville Co-operative Bank,* 173 Mass. 54. This rule in regard to savings banks is in some particulars more strict than that in regard to business corporations.

In the case before us it appears that the only report made upon the loan in question was by a single member of the board of investment. The report called for in the statute is a report in writing which is to be filed and preserved with the records of the corporation, and this report is to include a certificate of value. For the reason that there was no such report as the statute calls for, there was not only no loan to the plaintiff, but no binding contract to make a loan.

On an examination of the plaintiff's title to the property to be mortgaged, the defendant's solicitor found such supposed incumbrances as induced him to report to the defendant that the title was not satisfactory, and for that reason the defendant declined to proceed further with the business. If the application had contained no express statement on this subject, there would have been an implied agreement that the plaintiff's mortgage should convey a perfect title. If the defendant had contracted to make

a loan to the plaintiff, the plaintiff could have no remedy for the subsequent refusal to make it, unless she could show that her title was good beyond a reasonable doubt. *Sturtevant* v. *Jaques*, 14 Allen, 523. *Jeffries* v. *Jeffries*, 117 Mass. 184. *Noyes* v. *Johnson*, 139 Mass. 436. *Loring* v. *Whitney*, 167 Mass. 550. *Conley* v. *Finn*, 171 Mass. 70. *Gilman* v. *Gilman*, 171 Mass. 46. This is the general rule under ordinary contracts for a conveyance of land.

But the application signed by the plaintiff in this case contained this language: "that the title to the above mentioned real estate is to be examined and the papers prepared by one of the solicitors of the bank; and that such title will not be considered satisfactory, if the estate is held subject to any conditions or restrictions. The expense of examining the title, whether finally accepted or rejected, is to be borne by the undersigned, etc." Here is a plain implication that the title must be satisfactory to the solicitor of the bank, and that it may be accepted or rejected by him, according to his opinion in regard to its validity. We think the reasonable interpretation of this language, in the connection in which it is used, is that the title must be such as the solicitor of the bank, acting in good faith in the exercise of his judgment, deems good. By way of special explanation it is said that it will not be considered satisfactory if the estate is held subject to any conditions or restrictions. In view of the purpose of the application and the relations of the parties, it would not be reasonable to suppose that the bank was to accept the title and make the loan, if, in the opinion of its solicitor, there were such defects or uncertainties in it as would expose the holder to a risk of loss from an outside claimant. In this case the record shows an outstanding tax title whose validity could not be determined without resorting to oral testimony. Furthermore, the release of a mortgage incumbrance was by a deed which purported to be executed by an attorney of the mortgagee, while there was nothing to show that any power of attorney had been acknowledged and recorded as required by the Pub. Sts. c. 120, § 14. Gen. Sts. c. 89, § 29. We consider the solicitor's report that the title was not satisfactory for the reasons shown by the record, a sufficient justification of the defendant's refusal to make the loan. *Judgment affirmed.*