YORK COUNTY SAVINGS BANK *vs.* AGLAIE WENTWORTH.

York.     Opinion, November 24, 1939.

*Waterhouse, Titcomb & Siddall,* for plaintiff.
*Louis B. Lausier,* specially,
*William P. Donahue,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

(DUNN, C. J., sat at argument but did not participate in the decision in this case because of his death on November 10, 1939.)

HUDSON, J.    Writ of entry brought by a mortgagee under Sec. 9 of Chap. 104, R. S. 1930 to recover possession of certain real estate in the City of Saco. Plea, *nul disseisin.* The case was heard by a Justice of the Superior Court without intervention of jury. Sec. 26, Chap. 91, R. S. 1930. Judgment was rendered for the plaintiff. It comes to us on exceptions, first to the admission of certain testimony, and second to the decision.

The admitted evidence consisted of five mortgages covering the real estate in question and the notes secured by them. The defendant contended that the loans evidenced by them were not authorized by the trustees of the bank.

Two sections of the statute in particular, namely, Sections 33 and 38 of Chap. 57, R. S. 1930, are relied upon by the defendant. Sec. 33 provides that "The trustees shall see to the proper investment of deposits and funds of the corporation, in the manner hereinbefore prescribed," and 38 that "The treasurer may, under the direction of the trustees, assign, discharge, and foreclose mortgages, and convey real estate held as security for loans, or the title of which accrued from foreclosure of mortgages, or judgments of courts."

If it be assumed that the trustees did not comply with the statutory enactments with reference to the making of these loans (there are facts in the record from which the Justice might have inferred an unrecorded approval of the loans by the trustees) and to the foreclosure of the mortgages, that fact is not a defense that may be set up in this action. In *Roberts* v. *Lane*, 64 Me., 108, this Court said on page 113:

"We do not think that any of the directions and restrictions contained in R. S., c. 47, Sec. 14, relative to banks and banking designed for the protection of their stock and bill holders and depositors, should be so construed as to operate adversely to their interests, and to relieve their debtors from the performance of contracts not expressly made void by the statute, and especially contracts which include no illegal element in their essence or obligation."

The Court then discussed *Richmond Bank* v. *Robinson*, 42 Me., 589, and said:

"It is true there is a *dictum* to that effect in *Richmond Bank* v. *Robinson*, 42 Maine, 589. But it seems to us that the *dictum* is opposed to the decision."

In the next paragraph, the Court stated:

". . . but Robinson's claim to resist the suit of the bank because its title to the note accrued by the violation of one of these restrictions was overruled, we think rightly, upon the ground that while such violation might make the directors individually responsible to the bank in case of loss, or might make the bank liable to injunction at the instance of the State, still

'the defendant cannot avail himself of this failure on their part to observe these requirements of the statute; as to him that violation was entirely collateral; it did not enter into or affect his contract.'"

The Court further stated:

"Of course we agree that the law will not lend its aid to compel a man to do that which is forbidden by statute. But there is no law against a man's paying the promissory note which he has made payable to bearer in lawful money, and the violation of law by the plaintiff's agents is entirely collateral. . . . The defendant here objects that there was no vote of the directors of the bank authorizing the transfer of the note in suit to the plaintiff.

"But we think that is a matter between the bank and its officers, of which the defendant cannot avail himself."

In *Farmington Savings Bank* v. *Fall*, 71 Me., 49, a case in which the statute concerned provided: ". . . but no loan shall be made on security of names alone," the Court said on page 53:

"But assuming that the law of New Hampshire is like ours, which is but a direction to the trustees, designed for the benefit and security of depositors, it is not to be so construed as to defeat its own purpose, and enable the makers of negotiable paper to set up defences, to which they would not be otherwise entitled."

The defendant relies on *Gilson* v. *Cambridge Savings Bank*, 180 Mass., 444, 62 N. E., 728, in which a statute in that Commonwealth provided:

"No loan on mortgage shall be made except upon the report of not less than two members of the board of investment, who shall certify to the value of the premises to be mortgaged, according to their best judgment, and such report shall be filed and preserved with the records of the corporation."

The action there was to recover damages for the breach of an alleged contract to lend the plaintiff money on the security of a mortgage

of real estate. The court held for the defendant, but stated on page 446 of 180 Mass., 62 N. E., on page 728:

"What would be the effect of this provision upon a contract executed in violation of it, it is unnecessary now to decide. We simply hold that an executory contract to lend money, made by a savings bank without such a report, cannot be enforced or made a foundation of a claim for damages."

Also see *Jones* v. *B. F. Butler Cooperative Bank,* 254 Mass., 82, 149 N. E., 657.

In *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass., 252, on page 258 , 97 N. E., on page 900, the Court said:

"We have no doubt that these statutes are mandatory and not merely directory. They are part of a series of careful provisions made to secure the interests of depositors and to make it certain that the conduct of trustees in making loans upon mortgages should be not only honest and careful, but manifestly so, done with the concurrence of other officers, and spread upon the records of the corporation. These are restrictions placed by the Legislature upon the power of the defendants. *A loan made without the observance of these requirements may be valid as between the bank and the borrower or as to third parties* [italics ours] ; *Gerrity* v. *Wareham Savings Bank,* 202 Mass., 214 ; but as between the defendants on the one side and the bank and its depositors on the other side their conduct in making loans in such a manner is ultra vires."

In 7 Am. Jur., Sec. 647, on page 469, we find this statement:

"The banking laws (and in earlier times bank charters) usually contain restrictions upon loans which the bank may make, and frequently, they either prohibit the making of particular kinds of loans or loans to particular classes of persons, or permit them to be made only under certain conditions. . . . The fact, however, that a bank, in making a loan, violates any such statutory provision does not prevent it from recovering the money loaned or afford the borrower any defense to recovery. . . . Such provisions are intended, as a rule, for the gov-

ernment of the bank. Permitting a borrower who has secured an excessive loan to avoid payment of the money actually received by him would injure the interest of creditors, stockholders, and all who have an interest in the safety and prosperity of the bank."

The legislature never intended that nonconformance by the bank officials with these provisions of the statute, although mandatory, enacted solely for the proper government of the bank, should enure to the benefit of and constitute a defense for a borrower of the bank's money. The justice ruled rightly in admitting this evidence.

The defendant claims title by virtue of certain tax deeds and also from an execution sale in an action of debt to enforce a tax lien. Sec. 28 of Chap. 14, R. S. 1930, as amended. These titles the plaintiff assails as illegal for reasons argued at length, which now, because of what will presently be stated, need not be considered.

The defendant, it seems, is a devisee under the will of the mortgagor, William L. Gerrish. As devisee, she stands in his stead. It is well settled law in this state "that a mortgagor can not buy in a tax title and assert it successfully against a mortgagee, *Dunn* v. *Snell*, 74 Me., 22 ; *Phinney* v. *Day*, 76 Me., 83. . . ." *Dalton* v. *Lessard*, 136 Me., 94, 96. After giving the argument of the defendant therein, our Court stated in the Dalton case, *supra*, "But the reasons underlying the general doctrine go much deeper than counsel assumes. . . . The decisive factor is not that the obligation to pay the tax rests on the one asserting the title, but the real question is whether on broad equitable grounds he should be estopped to assert the title which he holds."

Here the evidence discloses that this plaintiff, not theretofore having knowledge of these tax sales, was approached by the defendant who stated that if the bank would give her a discount on the interest, she would square up the taxes and interest. She wanted to keep the property. Subsequently thereto, instead of paying the taxes, she bought up the tax titles and now would assert them against the plaintiff. Although she was not legally bound to pay these taxes, it would be inequitable to allow her to defend successfully on these purchased tax titles.

The defendant contended that the record fails to disclose that

she is the devisee named in the Gerrish will, but we think otherwise. The record·discloses that not only did the defendant have the above mentioned conversation with the treasurer of the bank, but that shortly after the death of the mortgagor, she informed the treasurer that she was collecting the rents on the property covered by the mortgages. We can not say that, in the absence of any evidence whatsoever to the contrary, there were no facts in the case from which the presiding Justice could not have found that she was the one named in the will as devisee.

The mandate must be,

*Exceptions overruled.*