J-S42003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT POLZER, | |
| Appellant | No. 298 WDA 2015 |

Appeal from the PCRA Order December 15, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013546-2008

BEFORE:  SHOGAN, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 22, 2016**

Appellant, Robert Polzer, appeals *pro se* from the order entered on December 15, 2014, that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

In an opinion filed in response to Appellant's direct appeal, the trial court provided the following factual background:

> This matter arises out of an assault on the victim which occurred at Defendant's apartment on the Northside of Pittsburgh on August 20, 2008. The victim, who was 23 years old at the time of trial, first met Defendant in March 2008. (T., p. 33)  She testified that she was friends with Defendant and had been to Defendant's apartment on prior occasions.  On the afternoon of August 19, 2008 she began watching a movie with Defendant at his apartment but they did not finish the movie and, therefore, the following day she called Defendant and asked

---

[*]  Former Justice specially assigned to the Superior Court.

if she could return to his apartment to finish watching the movie. (T., p. 35)  The victim testified that she and Defendant went into Defendant's bedroom to watch the movie while they were lying on Defendant's bed. (T., p. 36)  As she was watching the movie she fell asleep, however, she later awakened to the sensation of a pulling on her right arm. (T., p. 37)  When she opened her eyes she realized that Defendant was handcuffing her right hand to the bedpost.  She asked Defendant what he was doing and asked him to stop.  As she struggled with Defendant he then began taping her with duct tape around her mouth and head while straddling her. (T., p. 39)  She testified that as Defendant straddled her that she bit him on his leg.  The victim further testified that before Defendant was able to handcuff her left hand she reached into her pocket and dialed 911 on her cell phone. (T., p. 39)  After she was handcuffed, Defendant took her pants and underwear off and told her he was going to get her pregnant. (T., p. 40-41)  After she was restrained and her mouth was taped the victim testified:

> "He put his mouth on my vagina.  He touched my breasts, he touched my whole body.  He was just forcing himself on me." (T., p. 42)

She also testified that he then, "put his penis in my vagina and he began to have sex." (T., p. 43)

The victim also testified that Defendant hit her in the face. (T., p. 43)  After completing the assault, Defendant took the tape off of the victim's mouth, removed the handcuffs and allowed the victim to leave the apartment.  The victim told Defendant she would not tell anyone what happened but immediately upon leaving Defendant's apartment she called the police from her cell phone and was taken to Magee Hospital. (T., p. 48)  The victim denied that she consented to being restrained or that the sexual relations with Defendant were consensual. (T., p. 49)

On cross examination the victim admitted that she had met Defendant months before the incident and that she had gone to various restaurants or bars with Defendant and had been to his apartment three or four times before the incident. (T., pp. 55-57)  The victim, however, denied that they were boyfriend and girlfriend but acknowledged that at one time before the incident she had slept over [at] his apartment, even

- 2 -

sleeping in the same bed. (T., p. 60) She testified, however, that she had never had sex with Defendant and that the intercourse and her restraint on the night of the incident were not consensual.

The Commonwealth presented the testimony of Detective Aprill-Noelle Campbell. Detective Campbell testified that she responded to the dispatch of the assault and located the victim on Terman Avenue, near Defendant's apartment. (T., p. 128) She indicated the victim appeared confused and scared and Detective Campbell noted red marks on both of her wrists and residue of the duct tape on her face which was red and inflamed. (T., pp. 129-130)

The Commonwealth called Deborah Ann Shane, a sexual assault nurse examiner with the Sexual Assault Response Team for Allegheny County, who examined the victim on August 20, 2008 at Magee Women's Hospital. (T., p. 156) She noted that the victim appeared to be very upset. She found duct tape residue in the victim's hair and on the back of her head and around her mouth. The victim's lips were red and swollen. (T., p. 159) She also noted and photographed abrasions and broken skin on the victim's wrists, arms, legs, buttocks and thighs, as well as ligature marks on her wrist. (T., p. 160-167) She did not note any injuries to the vagina or cervix. (T., p. 167) The victim's medical records were also entered into evidence. (T., p. 151)

The Commonwealth called Detective Gregory Boss. Detective Boss testified that he went to Defendant's residence on August 20, 2008 at 8:14 p.m. at which time Defendant was present and consented to a search of his apartment and an interview, which was conducted at police headquarters. (T., pp. 180-183) Defendant admitted that while the victim was sleeping in his apartment he began taking her pants off and she initially made a comment "not now", but then they had consensual sex. (T., 191) Defendant ultimately admitted using a belt to restrain the victim and using tape, but denied using handcuffs on the victim. (T., 195) Defendant also denied being bitten on the leg by the victim, however, when asked to show his legs Detective Boss noted the bite mark on Defendant's leg, near his knee. (T., pp. 196-197) Defendant's taped interview was offered into evidence. (T., p. 199) The Commonwealth also entered into evidence the recording of the 911 call that was initiated by the

victim during the assault as well as her call to 911 after the assault. (T., pp. 113, 117)

The Commonwealth also called Detective Daniel Honan who read a letter sent by Defendant to the victim on or about December 9, 2008. (T, pp. 221-230) The long letter included Defendant's statement that:

"There is really no excuse for what I did to you. The whole entire situation feels like a nightmare to me. I cannot believe I forced myself on to you. I feel so ashamed of myself." (T., p. 227)

In the letter, Defendant repeatedly expressed regret for the "awful" things he did to the victim, but also asked the victim to testify that the sexual intercourse and bondage was consensual. (T., p. 227)

In his defense, Defendant testified that he met the victim in February 2008. He testified they were friends and that he wanted a more involved relationship, but also acknowledged they never had sexual relations during that time. (T., p. 249, 257) Defendant claimed that on the night before the assault, the victim called him and informed him she wanted to have sex. (T., p. 263) Defendant admitted restraining the victim and having intercourse with her, asserting:

"I told her, you know, I wanted to, you know, do like S&M type of bondage stuff with her, sex play, and she was kind of cool with it." (T., p. 278)

He denied that any of the conduct was non-consensual or that the victim ever asked him to stop. (T., p. 279) He testified that after having sex that they spoke for approximately a half hour before she left. (T., p. 235) He acknowledged that he did put the handcuffs in a trash bag. (T., p. 289) Finally, he acknowledged writing the letter, essentially stating that although at the time the sex was consensual that he now "wanted her to know that I sympathize and empathize with her." (T., 293)

Trial Court Opinion, 4/23/13 at 3-7.

Appellant was convicted of rape and false imprisonment, and the trial court sentenced Appellant to an aggregate term of ten and one-half to twenty-one years of incarceration. On direct appeal, this Court affirmed Appellant's judgment of sentence. *Commonwealth v. Polzer*, 575 WDA 2011, 87 A.3d 386 (Pa. Super. filed September 18, 2013) (unpublished memorandum). Appellant did not file a petition for allowance of appeal in the Pennsylvania Supreme Court. Accordingly, his judgment of sentence became final thirty days later on October 18, 2013.[1]

Appellant filed a timely *pro se* PCRA petition on August 13, 2014, and the PCRA court appointed counsel in an order dated September 3, 2014. On October 24, 2014, PCRA counsel filed a *Turner/Finley*[2] no-merit letter and motion to withdraw as counsel. On November 18, 2014, the PCRA court granted counsel's motion to withdraw and notified Appellant of its intention to dismiss his PCRA petition. The PCRA court denied Appellant's PCRA petition in an order filed on December 15, 2014.

As a prefatory matter, we must address the timeliness of Appellant's *pro se* appeal as it implicates this Court's jurisdiction. *Commonwealth v.*

---

[1] 42 Pa.C.S. § 9545(b)(1) and (3).

[2] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) (setting forth the requirements for counsel to withdraw from representation in a collateral proceeding under the PCRA).

*Green*, 862 A.2d 613, 615 (Pa. Super. 2004). An appeal must be filed within thirty days after the entry of the order from which the appeal is taken. Pa.R.A.P. 903(a). While the docket reflects that Appellant's appeal was not filed in the PCRA court until January 20, 2015, which is more than thirty days after the December 15, 2014 order, under the prisoner mailbox rule, an incarcerated appellant's appeal is deemed filed on the date the appellant presents it to prison authorities for mailing. ***Commonwealth v. Patterson***, 931 A.2d 710, 714 (Pa. Super. 2007). Here, Appellant's notice of appeal is dated January 12, 2015. It appears that it was first erroneously mailed to this Court as opposed to the PCRA court, date-stamped received in Superior Court on January 16, 2015, and then forwarded to the PCRA court and marked filed on January 20, 2015. From these indicators, we are satisfied that Appellant placed his notice of appeal in the prison mail on or before January 14, 2015. Thus, we deem the notice of appeal timely.

On appeal, Appellant raises the following issues which we reproduce *verbatim* below:

> A. Did the PCRA Court err in its decision dismissing Appellant's PCRA petition without a hearing where:
>
> > I. The trial court erred in excluding statements of an unavailable declarant as an exception to the hearsay rule?; and on
> >
> > II. Whether the trial court erred on its defense motion sequestration order that allowed the lead case detective to conform her testimony to that of the complainant?;

III. Whether trial counsel was ineffective in failing to cross-examine Detective Campbell concerning her prior inconsistent statements?;

IV. Whether trial counsel was ineffective in failing to secure an available witness who was willing to testify on Appellant's behalf?;

V. Whether the sentencing court imposed an illegal sentence in violation of the Ex Post Facto Clause by invoking the "two strikes" mandatory minimum sentencing provision of 42 Pa.C.S.A. § 9714(a)(1), where the repeal of subsections (b) and (c) made the statute more harsh and punitive, subjecting Appellant to a greater punishment that took away the discretionary aspects of sentencing contrary to legislatures intent of Section 9714?;

VI. Whether the sentencing court imposed an illegal sentence, as to whether the mandatory minimum sentence provisions under Section 9714 (a)(1) constitute an illegal sentence pursuant to the United States Supreme Court's decision in Alleyne?;

VII. Whether the sentencing court imposed an illegal sentence in violation of the Sixth Amendment to the U.S. Const. by invoking the mandatory minimum sentencing provision of Section 9714, where such determination was not found by a jury and proved beyond a reasonable doubt ?;

VIII. Whether Section 9714 imposes new legal burdens of past transaction or occurrence and changes the punishment for the predicate offense in violation of the Fourteenth and Sixth Amendments?;

IX. Whether SORNA's registration and verification requirements under 42 Pa.C.S.A. § 9799.15(e)(3) violate the due process clause of the Fourteenth Amendment, and the

prohibition of the Ex Post Facto Clause to the U.S. Constitution, where Appellant has not been designated a sexually violent predator to warrant quarterly verification?

Appellant's Brief at 8-9.

Our standard of review for an order denying PCRA relief is limited to determining whether the record supports the PCRA court's determination and whether that decision is free of legal error. *Commonwealth v. Allen*, 48 A.3d 1283, 1285 (Pa. Super. 2012) (citation omitted). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id*.

At the outset, we note that Appellant's first two issues concern allegations of trial court error and are not cognizable under the PCRA because they could have been raised on direct appeal. *Commonwealth v. Spotz*, 18 A.3d 244, 270, (Pa. 2011) (citing 42 Pa.C.S. §§ 9543(a)(3) and 9544(b)). Issues three through eight present challenges to the legality of Appellant's sentence or raise claims of ineffective assistance of counsel, and are, therefore, cognizable under the PCRA. *See Commonwealth v. Hockenberry*, 689 A.2d 283, 288 (Pa. Super. 1997) (stating that issues relating to the legality of sentence cannot be waived and are cognizable under the PCRA); *see also* 42 Pa.C.S. § 9543(a)(2)(ii) (specifically providing that claims of ineffective assistance of counsel are cognizable under the PCRA). However, Appellant's ninth issue is waived. In his ninth issue, which appears as issue number seven in the argument portion of

Appellant's brief, Appellant baldly alleges that certain requirements of the Sex Offender Registration and Notification Act, 42 Pa.C.S. § 9799 *et seq.* ("SORNA") are unconstitutional and violate the *ex post facto* clause of the United States Constitution. Appellant's Brief at 37-39. Yet Appellant's argument on this issue in his brief consists of nothing more than quotations from various statutes and cases without any relevant application to the case at bar. Furthermore, although Appellant attempts to develop an argument in his reply brief, he has failed to illustrate how this Court can grant relief under the PCRA where his *ex post facto* argument was specifically rejected in *Commonwealth v. Perez*, 97 A.3d 747 (Pa. Super. 2014).

After our review of the briefs of the parties and the record certified to this Court on appeal, we conclude that the PCRA court's thorough opinion comprehensively addressed the aforementioned claims of error. Accordingly, we affirm the order denying Appellant's PCRA petition, and we do so based on the PCRA court's July 15, 2015 opinion.[3] We do, however, supplement the PCRA court's opinion in one respect.

It does not appear from the record that the PCRA court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Nevertheless, in his notice of appeal, Appellant raised numerous issues upon which he sought relief. These issues

---

[3] The parties are directed to attach a copy of the July 15, 2015 opinion in the event of future proceedings in this matter.

are the same challenges the PCRA court addressed in its opinion and which Appellant presented in his brief on appeal except for one.[4] Appellant now asserts that the trial court imposed a mandatory minimum sentence in violation of *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013). Appellant's Brief at 9.

In *Alleyne*, the United States Supreme Court held, *inter alia*, that the constitutional right to a jury trial requires any fact, other than a prior conviction, that prompts a mandatory minimum sentence to be proven beyond a reasonable doubt. *Id*. at 2160. Because Appellant's challenge pursuant to *Alleyne* implicates the legality of his sentence, we conclude that the issue is properly before this Court. *See Commonwealth v. Newman*, 99 A.3d 86, 90 (Pa. Super. 2014) (stating that challenges to a sentence based on the holding from *Alleyne* implicate the legality of the sentence and cannot be waived on appeal).

In the case at bar, Appellant received a ten-year mandatory minimum sentence on his rape conviction pursuant to 42 Pa.C.S. § 9714(a) due to a prior conviction for involuntary deviate sexual intercourse ("IDSI") which is an enumerated crime of violence under 42 Pa.C.S. § 9714(g). While *Alleyne* has curtailed the imposition of mandatory minimum sentences in

---

[4] Additionally, we point out that in the issues presented in his notice of appeal, Appellant raised a claim of ineffective assistance of counsel for failure to preserve a challenge to the weight of the evidence. However, Appellant has abandoned that issue on appeal.

many instances, as noted above, an exception to **Alleyne** is where a mandatory sentence is imposed because of a prior conviction. **Alleyne**, 133 S.Ct. at 2160 n.1 (citing **Almendarez-Torres v. United States**, 523 U.S. 224, 243-44 (1998)). Moreover, this Court has previously addressed this discrete issue and ruled that a mandatory minimum sentence imposed pursuant to Section 9714 based on a prior conviction does not violate **Alleyne**. **Commonwealth v. Reid**, 117 A.3d 777, 785 (Pa. Super. 2015). Thus, Appellant's challenge to the legality of his sentence based on the holding from **Alleyne** is meritless.

For the reasons set for above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2016

- 11 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF ) CRIMINAL DIVISION
PENNSYLVANIA, )
)
vs. ) CC NO. 200813546
)
ROBERT POLZER, )
)
Petitioner )

## OPINION

TODD, J.

July 15, 2015

This is an appeal by Petitioner, Robert Polzer, from an order of December 15, 2014 dismissing his pro se PCRA petition without a hearing. Petitioner was found guilty after a non-jury trial on December 1, 2010 of rape and false imprisonment arising out of an assault which occurred on August 20, 2008. Petitioner's judgment of sentence was affirmed by the Superior Court by a Memorandum Opinion of September 18, 2013. On August 13, 2014 Petitioner filed a pro se PCRA Petition. On September 3, 2014 counsel was appointed and on October 24, 2014 counsel filed a Motion to Withdraw and a *Turner/Finley* No Merit letter. On November 18, 2014 an order was entered granting the Motion to Withdraw and a Notice of Intent to Dismiss without a hearing was entered. On December 4, 2014 Petitioner filed an Amended PCRA Petition and Response to Notice to Dismiss. On December 15, 2014 an order was entered dismissing the

1

PCRA petition. On January 12, 2015 Petitioner filed a Notice of Appeal and Statement of Claims Raised on Appeal which set forth the following: [1]

"1.    Exclusion of Defendant's Statements;

2.    Incomplete Sequestration of a Testifying Witness;

3.    Ineffective Assistance of Trial Counsel. Improper Cross-Examination of Det. Campbell;

4.    Ineffective Assistance of Trial Counsel, Failure to Secure a Witness;

5.    Challenge to Weight of Evidence;

6.    Ex Post Facto Repeal of 42 Pa.C.S. § 9714(b)(c);

7.    Ex Post Facto Amendment of 42 Pa.C.S.A. § 9799.15(e); Sex Offender Registration."

## BACKGROUND

The procedural history of this case and the evidence at trial which lead to Petitioner's conviction are set forth in detail in the § 1925(b) Opinion of April 23, 2013 and in the Superior Court's Memorandum Opinion of September 18, 2013. In his Petition Petitioner raised claims that trial and appellate counsel were ineffective in the following respects: in providing nominal representation on direct appeal; in failing to object to testimony of Detective Campbell regarding her investigation reports and statements made by the victim; in failing to secure a witness to corroborate Petitioner's testimony and impeach the victim; and, in failing to properly preserve a weight of the evidence issue on appeal. In addition, Petitioner alleged that the Commonwealth failed to notify Petitioner of its intent to invoke the mandatory sentencing provisions of § 9714 prior to sentencing; that the sentencing court was not sufficiently familiar with the trial record

---

[1] Petitioner's Statement of Claims on Appeal contains headings as listed below with detailed statements following each heading. The details of each claim will be reviewed but only the headings are listed herein for sake of brevity.

2

and abused its discretion by sentencing Petitioner in the absence of the trial judge who had retired. Petitioner also alleged that the trial court erred in the following respects: in permitting the redaction of portions of his recorded statement given to police; in not allowing testimony concerning the victim's reputation for truth, credibility and conduct; and, in not sequestering Detective Campbell or ordering her to testify before the victim. Petitioner also alleged that the repeal of 42 Pa. C.S.A. § 9714 (b) and (c) was punitive in nature and subjected him to a heightened degree of criminal punishment and, therefore, is an unconstitutional *ex post facto* law. Finally, Petitioner alleged that the amendment of Megan's law at 42 Pa. C.S.A. § 9799.15(e) is an unconstitutional *ex post facto* law because it subjected him to enhanced reporting requirements that would not have been required absent the amendment. PCRA counsel conducted a detailed and thorough review of each of Petitioner's claims and found them to be without merit. After a review of the entire record, an order was entered dismissing the petition without a hearing. Petitioner now raises on appeal the claims set forth above.

## DISCUSSION

In his first issue raised on appeal, Petitioner asserts that the trial court erred in excluding a portion of Petitioner's recorded statement that was taken by police after his arrest. The statement, which was approximately 21 minutes long, was played for the jury. (T., p. 199) However, at the commencement of trial the Commonwealth moved for leave to delete portions of the statement on the basis that the statement made by Petitioner contained inadmissible hearsay. (T., p. 4) The portion of the statement which the Commonwealth wished to delete was Petitioner's statement as follows:

> "I met her through my friend Tommy Pennington, and *he told me recently to stay away from her, don't be involved with her, she said she's going to try to set me up for rape.* She's no good, and she knew my past charges, you know, and she started months ago when we got in some kind of like argument." (T., p. 4)

3

In addition, the Commonwealth also wished to delete a portion of the statement in which Petitioner stated that he heard from "This guy at the bar we went to" that the victim was "nothing but a $2 whore." (T., p. 6) Counsel for Petitioner objected to the deletion of both portions of his statement on the basis that the statements were statements of his own state of mind. The trial court permitted the Commonwealth to delete the referenced portions of Petitioner's statement on the basis that it was inadmissible hearsay. (T., p. 6)

Petitioner now claims that statements were admissible under Pa.R.E. §§ 803(1), (3) and (21) which provide as follows:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

(1) **Present Sense Impression.** A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.

(3)**Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

(21) **Reputation Concerning Character.** A reputation among a person's associates or in the community concerning the person's character.

In *Bugosh v. Allen Refractories Co.*, 932 A.2d 901 (Pa. Super. 2007) the Superior Court stated the following regarding Rule 803(1):

Pa.R.E. 803(1) defines the present sense exception as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." "The exception allows testimony concerning events observed by the declarant regardless of whether or not the declarant was excited. The statement must be made at the time of the event or so shortly thereafter that the declarant would be unlikely to have the opportunity to decide to make a false statement." *Harris v. Toys "R" Us–Penn, Inc.*, 880 A.2d 1270, 1279 (Pa.Super.2005), *appeal denied,* 586 Pa. 770, 895 A.2d 1262 (2006). *Bugosh v. Allen Refractories Co.*, 932 A.2d 901, 914 (2007)

4

The statement made by Petitioner clearly does not qualify as a present sense impression. The statement was not offered as one made by the declarant (Pennington) at the time of the event or so shortly thereafter that the declarant will be unlikely to have the opportunity to decide to make a false statement. It is also clear that Pennington's statement is not admissible as a statement of his then existing state of mind or emotional, sensory or physical condition. His statement is simply a hearsay statement allegedly made by the victim to Pennington at some time prior to the assault in question. Finally, the statement is not admissible as evidence of the victim's past sexual conduct or reputation for past sexual conduct; as such evidence is inadmissible pursuant to 18 Pa.C.S.A. §3104(a) which provides in pertinent part:

> **General rule.**--Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence. 18 Pa.C.S.A.§ 3104 (a)

In addition, to the extent that the testimony was offered as the opinion of the declarant that the victim was "no good," this testimony does not go to the reputation of the victim in the community but was an expression of the personal opinion of the declarant. There was no error by the trial court in granting the Commonwealth's motion to delete portions of the Petitioner's recorded statement.

Petitioner next asserts that the court erred in its sequestration of a testifying witness. Specifically, Petitioner alleges that the court abused its discretion in failing to sequester Detective Aprill Campbell during the trial. At the commencement of the trial defense counsel requested the sequestration of witnesses. The Commonwealth agreed to the sequestration of the witnesses, with the exception of Detective Aprill Campbell, which was granted by the court. (T., pp. 31- 32) Detective Campbell worked in the Sex Assault and Child Abuse Unit and was

5

responsible for the investigation of all sexual assault crimes against children and adults and all physical abuse cases against children. (T., pp. 126-127) She was actively involved in the investigation against Petitioner. Pa.R.E. 615 provides for the sequestration of witnesses. Rule 615 provides:

> At a party's request the court may order witnesses sequestered so that they cannot learn of other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize sequestering:
> (a) a party who is a natural person;
> *(b) an officer or employee of a party that is not a natural person (including the Commonwealth) after being designated as the party's representative by its attorney;*
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
> (d) a person authorized by statute or rule to be present. Pa.R.E. 615 (emphasis added)

As noted in *Commonwealth v. Stevenson*, 894 A.2d 759 (Pa. Super. 2006), the Commonwealth may designate a law enforcement agent responsible for investigating the case to be present at counsel table to assist in presenting the case, even though the law enforcement officer may be a witness. Here the prosecutor designated Detective Campbell as the representative to be present during the case and, therefore, there was no error in failing to sequester Detective Campbell. Finally, there is no evidence to support the contention that the trial court abused its discretion as it pertained to the mode and order of examining witnesses and presenting evidence in violation of Pa.R.E. 611. Petitioner's claim that the trial court should it compelled Detective Campbell to testify first is meritless.

Petitioner next contends that counsel was ineffective in failing to cross-examine Detective Campbell concerning testimony given by Detective Campbell which was allegedly contradicted by entries in her investigating report. Petitioner cites the following testimony of Detective Campbell:

6

Q. Did she tell you she had been there the day before?

A. Yes.

Q. And that she wanted to come back and see the end of the movie?

A. Yes.

Q. Did she tell you that she told Mr. Polzer, "I want to take up where we left off"?

A. I don't recall the exact wording. I'm not – –

Q. Did she tell you she had spent the night before?

A. No, she said that she had left." (T., p. 142)

Petitioner asserts that the testimony of Detective Campbell that the victim had told her she had had not stayed at Petitioner's apartment the night before was inconsistent with Detective Campbell's statement in her report that the victim had told her she spent the night with Petitioner watching a movie. However, any alleged inconsistency concerning whether or not the victim spent the night before with Petitioner is contradicted by a letter Petitioner sent to the victim after his arrest and while awaiting trial. In his letter, which was read to the jury, Petitioner stated:

"Before you called me that night, I had a friend of mine over to stay the night and watch movies with me, and she even turned me down for sex. But when you called, my world came alive. I so loved hearing your voice. But that night didn't go the way I wishing and hoping it would; *and the next day when you came back over my place* and again shot me down for sex, I felt completely dead inside. There is really no excuse for what I did to you. That whole entire situation feels like a nightmare to me. I cannot believe I forced myself into you." (T., p. 224)

Clearly, by his own admission, the victim had not stayed the night before but left and came back the following day. In order for Petitioner to be entitled to relief on the basis that trial counsel was ineffective, Petitioner must show by a preponderance of the evidence ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Brady*, 741 A.2d 758, 763 (Pa. Super. 1999) This standard requires Petitioner to show: (1) that the claim is of arguable merit; (2) that counsel had no reasonable, objective

7

basis for his actions; and (3) that, but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different, that is, that the petitioner was prejudiced by the alleged ineffectiveness of counsel. *Commonwealth v. Kimball*, 724 A.2d 326, 333 (1999)  is presumed to be effective, however, and the burden rests with the petitioner to overcome that presumption. *Commonwealth v. Pierce*, 527 A.2d 973, 975 (1987), *Commonwealth v. Pirela*, 580 A.2d 848, 850 (1990), *appeal denied,* 594 A.2d 658 (1991).  If a petitioner fails to meet any one of these three prongs, then an evidentiary hearing is not necessary. *Commonwealth v. Wells*, 578 A.2d 27, 32 (Pa. Super. 1990)

Any alleged discrepancy between the investigative report of Detective Campbell and her trial testimony can be characterized as minor at best. Given the overwhelming evidence in this case against the Petitioner, trial counsel was not ineffective in failing to cross-examine Detective Campbell on this point nor was Petitioner prejudiced in any manner.

Petitioner next claims that counsel was ineffective in failing to secure a witness, Wendy Palchek, to impeach the credibility of the victim. To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, the petitioner must show: (1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on petitioner's behalf; and (5) that the absence of the testimony prejudiced the petitioner. *Commonwealth v. Brown*, 767 A.2d 576, 581-82 (Pa. Super. 2001) Petitioner testified at trial concerning his interaction between the proposed witness and the victim which allegedly occurred in the early morning hours of August 20, the day of the assault. (T., pp. 265-266)  Petitioner asserts that the witness would have contradicted the victim's testimony about whether or not she spent the night with Petitioner. However, as noted above the

8

Petitioner's own letter to the victim confirmed that she had not stayed the night and returned the following day. In addition, Petitioner's testimony at trial indicated that proposed witness, Wendy, spent only a few minutes in the car with the victim as Petitioner drove Wendy home. Any alleged failure to call the witness at trial did not prejudice Petitioner in light of the overwhelming evidence against Petitioner. In addition, Petitioner has failed to demonstrate that the witness was available and that the witness was prepared to cooperate and testify on his behalf. Therefore, there is no merit to this claim.

Petitioner next alleges that trial counsel was ineffective for failing to preserve the issue that the verdict was against the weight of the evidence. A claim that a verdict is against the weight of the evidence can only be sustained in the extraordinary circumstances where the verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative. A new trial should not be granted based on a claim that the verdict is against the weight of the evidence merely because there are conflicts in the testimony. *Commonwealth v. Blakeney*, 946 Pa. 645, 653 (2008). A review of the record in this case clearly indicates that the verdict was not against the weight of the evidence. Indeed, a review of the Superior Court Memorandum Opinion indicates that the Court, in reviewing the sufficiency of the evidence, concluded:

> "Appellant's self-serving claims that the sexual encounter was essential because he and the victim engaged in a flirtatious relationship during the summer of 2008, the victim knew he 'liked her,' the victim returned to his house to finish watching the movie, and the victim shared his bed, do not negate the fact that he forced himself on the victim. The victim's testimony, the pictures showing her abrasions, and the appellant's letter in which he admitted forcing himself on her, all represent sufficient evidence to sustain his rape conviction." (Superior Court Memorandum Opinion, 9/18/2013, p. 10)

9

Any claim that counsel was ineffective in failing to preserve an issue concerning the sufficiency or weight of the evidence is meritless and, in fact, frivolous.

Petitioner next claims that the repeal of 42 Pa.C.S.A. § 9714(b),(c)(1) and (c)(2), dealing with the presumption of a defendant as a high-risk offender and establishing a procedure for a defendant to rebut the presumption, constituted an illegal *ex post facto* law. In *Lehman v. Pennsylvania State Police*, 839 A.2d 265, 269-70 (2003) the Court stated:

> A law may constitute a prohibited *ex post facto* provision in one of four ways:1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action.2d. Every law that aggravates a crime, or makes it greater than it was, when committed.3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender. *Commonwealth v. Young,* 536 Pa. 57, 637 A.2d 1313, 1317 (1993) (quoting *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (footnote omitted). "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Id.,* at 30, 101 S.Ct. 960. *Lehman v. Pennsylvania State Police,* 839 A.2d 265, 269-70 (2003)

The amendments to 42 Pa.C.S.A. §9714 were made in 2000 and clearly do not constitute an *ex post facto* law which entitles Petitioner to any relief in this matter.

Petitioner's next claim is that the amendments to Megan's law at 42 Pa. C.S.A. § 9799.15(e), which increased the sexual offender registration and notification periods is also an illegal *ex post facto* law as applied to him. For the reasons set forth above, this claim is meritless. In addition, the registration requirements under SORNA do not constitute criminal punishment but were enacted to effectuate the non-punitive goal of public safety rather than

10

criminal punishment. *Commonwealth v. McDonough*, 96 A.3d 1067 (2014)   Therefore,

Petitioner's claim is meritless.


By the Court:

_____ J.

11